[Nos. 139-2, 147-2, 214-41061-2,   Division Two.   January 14, 1971.]
322-41116-2, 296-2.

THE STATE OF WASHINGTON, *Respondent,* v. FRANK F. CARTER *et al., Appellants.*

*In the Matter of the Application for a Writ of Habeas Corpus of* CECIL GRANT WILSON, *Petitioner,* v. WILLIAM R. CONTE, *Respondent.*

Herbert Gelman, for appellant Carter (appointed counsel for appeal).

Durward E. Self, for appellant Wilson (appointed counsel for appeal).

Frank P. Girolami, for appellant Miranda (appointed counsel for appeal).

Robert G. Kerr, for appellant Reinhart (appointed counsel for appeal).

Cecil Grant Wilson, pro se.

Slade Gorton, Attorney General, Stephen C. Way, Assistant, Ronald L. Hendry, Prosecuting Attorney, Joseph D. Mladinov, Special Counsel, and Eugene G. Olson, Chief Criminal Deputy, for respondent.

ARMSTRONG, C. J.—This is the case of the spontaneous robbery—at least that is the contention of defendants Rodney Ronald Reinhart, Cecil Grant Wilson, and John Lee Miranda. They maintain that they were unaware that a robbery had been planned. The primary question they present is whether the court's instructions permitted them to effectively present their defense of unwitting participation in the robbery of LaPore's ShopRite. The instructions did not advise the jury that proof of an intent to commit the crime is an essential element of the crime of robbery.

Their cases and the case of Frank F. Carter were consolidated for trial. The four cases are on appeal from judgments and sentences following jury verdicts of robbery. The jury could have found the following facts.

It was cold on the evening of February 2, 1969, and in many areas of Tacoma snow remained on the ground and in the streets. In the narrow alley behind LaPore's ShopRite grocery, the snow had been pushed to the side but the usable portion of the alley was icy and travel was difficult without chains. There was snow and ice in the parking lot behind the grocery store, but a part of the snow had been pushed by a snow plow against a telephone pole.

The four defendants and a good many other people had been attending a party at the house of defendant Wilson, which is in the Parkland area south of Tacoma. During the course of the evening, two of the guests requested that Wilson take them to where they could pick up their car. A bit later defendant Miranda asked whether he might get a ride to his house. About this time, defendants Carter and Reinhart joined the conversation and ultimately it was decided that the whole group of six people would take Carter's car and begin the expedition. Wilson drove the car.

After dropping the other two guests at their car, the four defendants continued to Miranda's house, where they found Miranda's roommate was not at home. Miranda, however, suggested that the roommate might be found at the home of one of the roommate's friends in the North 26th and Proctor area of Tacoma, and so the group went off on an unsuccessful search for the roommate's car.

Wilson was not familiar with the north Tacoma area and his driving was directed by other members of the group. They passed LaPore's ShopRite at 21st and Alder. They decided to purchase more party supplies and then return to Wilson's house, according to the testimony of Wilson and Miranda, who were the only defendants to testify at the trial. There was snow pushed up over the curb and Miranda stated that no parking space was available in front of the store.

Wilson was directed to drive into the alley and he parked the car with two wheels in the snow of the parking lot and two wheels in the alley. The motor was turned off and the

lights were on dim. Wilson stated that he remained in the car in case the car had to be moved.

A neighbor could not get by the Wilson car and Wilson had to move it. Thereafter, Wilson stated that he left the motor on because the car was getting cold. The neighbor became suspicious of the car parked in that manner, and took down the license number.

The clerk on duty testified that while he was alone in the store, three men entered and proceeded to select various items—cigarettes, beer, potato chips, nuts and mints. The victim, who had been robbed on prior occasions, noticed nothing unusual about the shopping. The three men came to the checkstand and one took out his wallet and apparently was getting ready to pay for the purchases.

Suddenly, without any prior warning or indication, one of the men stepped around the counter, behind the clerk, pulled a pistol, and screamed, "Get the money! Get the money!" One of the two opposite the clerk reached across the counter and began scooping up the contents of the cash drawer. A 5-dollar bill hung up on the drawer and the clerk, though he said he was uncertain and could not swear to it, thought perhaps the other one of the two on the customer side of the counter reached to grab it.

A potential customer came up to the front glass door while the robbery was in progress. At the trial, he identified Carter as one of the men he had seen. He stated that the man wearing the dark jacket was the one behind the checkstand. He noted that the two men standing at the counter appeared excited and were shifting their weight from foot to foot. The three men rushed out of the store with the items they had selected, but they left the sales slip on the counter.

The neighbor furnished the license number to the police. Within a short time, the defendants were apprehended. Wilson was driving the car and Carter was seated beside him in the front passenger seat. Miranda and Reinhart were crouched down in the back seat. A dark jacket was in the front seat between Carter and Wilson. Under Carter's

seat, about 6 inches back, was a cocked and loaded pistol. A substantial amount of money was stuck in Reinhart's coat pocket. Miranda had a 5-dollar bill, a quarter, and two pennies in his pocket.

Although the identification of which party pulled the gun was somewhat confused by the testimony of the clerk and the potential customer, who were obviously very excited, strong inferences of identity could be obtained from the position of the parties in the car when they were apprehended by the police.

Wilson was obviously the driver and he was not seen in the store. Carter had the dark jacket beside him and the cocked and loaded pistol under his seat—the inference would be that he was the one who pulled the gun and screamed, "Get the money! Get the money!" The substantial amount of money in Reinhart's pocket would indicate that he was the man who obeyed the order and cleaned out the cash register. Miranda's undisputed testimony was that he pulled his wallet out and started to pay for the "party supplies"—he had $5.27 in his pocket.

We will discuss the contentions of the various defendants individually and collectively and will supplement the foregoing statement with such additional facts as are needed to discuss the particular issues raised by each of them.

### Appellant Rodney Reinhart

Defendant Reinhart first argues that he ought to have been awarded a separate trial, rather than being tried jointly with the three other defendants. We find this argument to be without merit. A statute provides separate trials are a matter left to the sound discretion of trial courts. RCW 10.46.100.

Defendant Reinhart claims that he was prejudiced in the joint trial because he was denied an opportunity to prove by the testimony of a detective that defendant Miranda had given a statement in which he said the robbery had not been planned and that defendant Carter had held the weapon. Miranda took the witness stand and testified

that the robbery had not been planned. He further stated that he did not see Rodney Reinhart with a gun. As previously stated, the strong inferences from the other evidence would indicate that Carter held the gun and Reinhart removed the money from the cash register. We find no prejudice to Reinhart in the exclusion of the testimony of the detective.

Defendant Reinhart, together with all of the other defendants, contended that separate trials should have been granted because there was a conflict of interest between the several participants. Reinhart and Carter did not take the witness stand in their own defense. Miranda and Wilson did take the witness stand and denied that they knowingly participated in the robbery.

The fact that the interests of the participants were conflicting was resolved by our Supreme Court in *State v. Davis*, 73 Wn.2d 271, 290, 438 P.2d 185 (1968), wherein the court stated:

> The fact that the interests of all the participants in a crime conflict does not require that the court grant each of several participants a separate trial. Such conflicts invariably will be present "where two or more persons are tried for the same crime . . . ." and if such conflicts are "regarded as requiring a separate trial, it is at once plain that the statute is rendered nugatory, and joint trials will be the exception and not the rule. But such was not the intent of the legislature." *State v. Clark*, 156 Wash. 47, 51, 286 Pac. 69 (1930).

We have examined the testimony and we find that the defendants were neither prejudiced nor denied a substantial right by the joint trial. The trial court did not abuse its discretion in refusing to grant separate trials to any of the defendants. *See State v. Smith*, 74 Wn.2d 744, 446 P.2d 571 (1968).

Defendant Reinhart's second contention is that the instructions which the trial court gave in defining the crime of robbery were inadequate and incomplete and he was prejudiced in his defense. We agree. The fatal defect in No. 13, the formula instruction, and in all the instructions as a

group, is their failure to properly define for the jury the element of intent that is a necessary part of the crime of robbery.[1]

In robbery, as in larceny generally, a necessary element of the offense is an animus furandi—an intent to steal. Clark and Marshall, A Treatise on the Law of Crimes § 12.10 (7th ed. 1967); 2 R. Anderson, Wharton's Criminal Law and Procedure § 548 (1957). The Washington Supreme Court has long recognized this intent element and found it

---

[1] The instructions in question, which fail to include the element of intent, are No. 7, which reads:

Robbery is the unlawful taking of personal property from the person of another, in his presence, against his will, by means of force or violence or fear of injury, immediate or future, to his person.

No. 9, which reads:

The value of the property taken or the amount of money taken in this case is immaterial, it being only necessary for the State to prove beyond a reasonable doubt that the defendant did take personal property of another that was of some value.

No. 10, which reads:

According to the law of the State of Washington every person concerned in the commission of a crime, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who directly or indirectly counsels, encourages, hires, commands, induces, or otherwise procures another to commit a crime, is a principal, and shall be proceeded against and punished as such.

No. 13, the formula instruction, which reads:

If you find from the evidence beyond a reasonable doubt all of the following alleged facts, to-wit:

1. That the defendant, RODNEY RONALD REINHART, did unlawfully take personal property from the person or in the presence of William Earl Courtney;

2. That the property so taken was taken against the will of said William Earl Courtney and that it was taken by means of force or violence or fear of immediate injury to the person of William Earl Courtney.

3. That the property so taken was in the possession of William Earl Courtney as agent, bailee, or employee of LaPores ShopRite, the owner thereof; and

4. That the said unlawful taking occurred in Pierce County, Washington, on or about the 2nd day of February, 1969;

Then you shall find the defendant, RODNEY RONALD REINHART, guilty of ROBBERY as charged in the amended information.

A similar formula instruction was given for the other defendants.

to be a necessary part of the offense. *State v. Byers,* 136 Wash. 620, 241 P. 9 (1925); *State v. Steele,* 150 Wash. 466, 273 P. 742 (1929); *Wilken v. Squier,* 50 Wn.2d 58, 309 P.2d 746 (1957).[2] In an attempt to rob a number of people, there need be no showing of intent to rob any one particular person, but there must be an intent to rob the group. *State v. Waite,* 141 Wash. 429, 251 P. 855 (1926). At any rate, the element of intent to rob is necessary to state the offense. The use of the word "unlawful" without explanation is not sufficient, we think, to inform the jury of the sort of intent an actor must have in order for his act to be robbery, when the element of intent has been placed in issue.

Defendant Reinhart argues that his defense was lack of intent to rob and points to the testimony of Miranda and Wilson that the robbery was not planned, the fact that the three persons shopped for groceries in a normal manner before the robbery, and other circumstances, to substantiate this claim. Only the unplanned and spontaneous appearance of a weapon caused him to participate in the taking of money, he argues.

Since Reinhart did not take the witness stand and explain why he took the money when commanded to do so, he does not have a strong case. When we consider the evidence, and inferences from the evidence, in their most favorable light, however, we find that the element of intent was placed in issue.

It is, of course, axiomatic that the state must prove all elements of the crime beyond a reasonable doubt. *State v. Adams,* 76 Wn.2d 650, 458 P.2d 558 (1969). Without an instruction setting forth the requirements of intent, the jury would not be informed of all of the elements of the crime of robbery. Thus, we are unsure whether the conviction is based upon a finding that all requisite elements of the offense were properly proven. This is a fatal defect, since the jury, without a proper statement of the law, was

[2]*But cf. State v. Haynes,* 58 Wn.2d 716, 364 P.2d 935 (1961), *vacated and remanded sub nom., Haynes v. Washington,* 373 U.S. 503, 10 L. Ed. 2d 513, 83 S. Ct. 1336 (1963).

allowed to speculate on the guilt of the defendant. *See State v. Turner*, 78 Wn.2d 276, 474 P.2d 91 (1970).

■ An error in a particular instruction does not warrant a reversal if the instructions as a whole cover the law of the case fairly. An exception to the rule occurs when the court endeavors to state all the essential elements of the law in a formula instruction. In a formula instruction, the omission of any essential element of the crime is fatal. 5 R. Anderson, Wharton's Criminal Law and Procedure § 2093 (1957).[3] We find instruction No. 13 to be a formula instruction.

Not only does the formula instruction fail to set forth the essential element of intent, but the instructions as a whole fail to set forth the element of intent. This is a fatal defect. Wharton's Criminal Law and Procedure, *supra; United States v. Nedley*, 255 F.2d 350 (3d Cir. 1958); *see also State v. Hayes*, 73 Wn.2d 568, 439 P.2d 978 (1968).

The problem was compounded as to defendants Reinhart, Miranda, and Wilson because of the use of the word "concerned" in instruction No. 10, which purports to set forth the law on aiding and abetting. A lawyer would understand the meaning of "every person concerned in the commission of a crime." We question whether a layman would necessarily understand it in the context of the defenses in this case, without a clear instruction on intent.

■ We are well aware of the rule that courts may use the language of the statute in instructing a jury *where the law governing the case is expressed in the statute*. However, the court's instructions must permit the parties to thoroughly argue to the jury their theories of the case. *State v. Hardwick*, 74 Wn.2d 828, 447 P.2d 80 (1968). The defendants Reinhart, Miranda and Wilson could not satisfactorily argue their theories of the case to the jury on the

---

[3]Our Supreme Court considered a formula instruction in a medical malpractice case in *Gray v. Davidson*, 15 Wn.2d 257, 130 P.2d 341, 136 P.2d 187 (1942). At page 265 the court stated: "[I]t is true that we have frequently held that instructions should be considered as a whole, but in this case instruction No. 3, which the trial court deemed erroneous, is complete in itself, and stands or falls upon its own language."

basis of the instructions submitted. *See State v. Mello,* 3 Wn. App. 555, 477 P.2d 42 (1970).

Defendant Reinhart also challenged the sufficiency of the evidence to convict him of robbery. Because of our reversal on the ground of the inadequate instructions, we shall not discuss this contention, other than to find that there was sufficient evidence to create a jury question as to the guilt of all four defendants.

The conviction of defendant Reinhart is reversed.

### APPELLANTS CECIL WILSON AND JOHN MIRANDA

Defendants Wilson and Miranda contend that the trial court abused its discretion in denying them a new trial. We reject this contention for the reasons previously stated. We also reject their challenge to the sufficiency of the evidence.

Both defendants Wilson and Miranda joined in the exceptions to the instructions taken by defendant Reinhart. The rationale set forth with reference to defendant Reinhart is equally applicable to them.

There is a difference in the defenses of defendants Wilson and Miranda and that of defendant Reinhart. Reinhart did not take the witness stand and must necessarily rely upon the statements of Wilson and Miranda that the robbery was unplanned and by an inference that he acted in response to the command of the other defendant. Wilson and Miranda gave consistent testimony that it was unplanned. Wilson maintained that he knew nothing about it until the men came running to the car and did not fully understand it until the arrest by the police officers. Miranda maintained that he learned about the robbery when one of the party—by strong inference Carter—pulled the gun and screamed "Get the money! Get the money!"

There were numerous corroborating inferences to sustain the testimony of Wilson and Miranda. The group walked into a grocery store when there were no other customers. That would be a logical time to rob the lone clerk. Instead, they went shopping for items that clearly could be used for party supplies. The clerk noticed nothing wrong when the three walked up to the counter with the party supplies and

Miranda started to pay for them. The potential customer at the door saw the man with the gun on the clerk's side of the counter and the other two in their proper position across the counter, appearing nervous, shifting their weight from one foot to another. None of this is absolute proof of innocent participation, but it does present a plausible defense. Wilson and Miranda were effectively denied an opportunity to present their defense because the instructions did not include the necessary element of intent.

The convictions of defendants Wilson and Miranda will be reversed.

### APPELLANT FRANK CARTER

Defendant Carter raises only the question of whether he ought to have been granted a separate trial. For the reasons stated above, we must answer this question in the negative. Defendant Carter took no exceptions to the instructions proposed by the trial court. Thus, we must consider him to have waived any objections to the instructions. *State v. Moore*, 77 Wn.2d 54, 459 P.2d 643 (1969).

Furthermore, there was no evidence presented in Carter's case which placed the element of intent in issue. There has been no showing that Carter was prejudiced by the failure to properly define the necessary element of intent to rob. In the absence of prejudice, even reviewable error is not reversible. *State v. Morgan*, 3 Wn. App. 470, 475 P.2d 923 (1970).

### WRIT OF HABEAS CORPUS OF CECIL WILSON

In view of our disposition of defendant Wilson's case above, the issues raised in this writ appear to us to be moot. The writ will be dismissed.

Affirmed as to defendant Frank Carter.

Reversed and remanded for a new trial as to defendants Cecil Wilson, John Miranda, and Rodney Reinhart.

PEARSON and PETRIE, JJ., concur.

Petition for rehearing denied February 23, 1971.

Review denied by Supreme Court April 16, 1971.