[Nos. 4612-1-II; 4786-1-II. Division Two. April 29, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. SHARON K. AMMLUNG, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. LARRY TITCOMBE, *Appellant.*

---

*G. Saxon Rodgers,* for appellant Ammlung.

*Paul H. Watt,* for appellant Titcombe.

*Patrick D. Sutherland, Prosecuting Attorney, Richard Strophy, Deputy,* and *Ken Valz, Legal Intern,* for respondent.

REED, C.J.—Defendants Larry Titcombe and Sharon K.

Ammlung appeal jury convictions of first and second degree robbery on numerous grounds. We find no reversible error and affirm.

On September 18, 1979, Mrs. Vesna Slavich was approached by a man and woman in the parking lot of a Safeway store in Lacey. The man grabbed Mrs. Slavich by her arm while the accompanying woman blocked her path. The man then told Mrs. Slavich her life was in danger and forced her to surrender the keys to her car. Upon obtaining the keys the two assailants entered the vehicle and drove away.

Approximately 10 minutes later a lone male entered a nearby bank, put a knife to the throat of a teller and demanded money. The other tellers complied with the demand and the man escaped with over $7,000. He was observed getting into a car driven by a woman. This car was subsequently identified as the vehicle which had been stolen from Mrs. Slavich. Unbeknownst to the robber, his crime was recorded on the bank's hidden video camera.

On October 4, 1979, Army Sergeant DeLucco identified a newspaper photograph of the male robbery suspect as defendant Titcombe. DeLucco informed the police that Titcombe and Ammlung were AWOL soldiers who had been staying with him during the 5 days prior to the crimes. He also revealed that the defendants discussed a hypothetical bank robbery in his presence and that he had dropped them off across the street from the Safeway store on the day of the robberies.

In October 1979, the defendants were arrested in Louisiana and subsequently extradited back to Washington to stand trial. An omnibus hearing was eventually held in January 1980. During the intervening months Titcombe's appearance had changed substantially. He had allowed his hair to grow and acquired a full beard. At the omnibus hearing the court granted the State's motion to have Titcombe groomed before placing him in a lineup, using for guidance a 5–year–old Red Cross photograph.

the lineup several employees of the victimized bank

identified Titcombe as the robbery suspect. These and other witnesses to the bank robbery also made in–court identifications. Although there was no eyewitness identification of Ammlung as the woman in the parking lot or as the driver of the getaway car, the jury ultimately convicted both defendants of first and second degree robbery (*i.e.*, the bank robbery and the forcible taking of Mrs. Slavich's vehicle, respectively). Additionally, the jury made a special finding that Titcombe had been armed with a deadly weapon during the commission of the first degree robbery. RCW 9.95.040.

█ On appeal we turn first to the assignments of error raised by defendant Titcombe. Titcombe initially challenges the propriety of the involuntary grooming he was forced to undergo before taking part in the identification lineup. Specifically, he contends that the grooming was improper because it was modeled on a Red Cross photograph that had been taken 5 years prior to the robberies. This contention is unfounded. A suspect may be groomed prior to a lineup to duplicate his appearance at the time of the alleged criminal act. *People v. Delgado,* 97 Misc. 2d 716, 412 N.Y.S.2d 254 (1978); *State v. McBain,* 30 Or. App. 1055, 569 P.2d 630 (1977). The record reveals that Sergeant DeLucco had informed the police that Titcombe had short hair, a military mustache and no beard the day of the robberies. This description corresponded exactly with Titcombe's appearance in the Red Cross photograph. Therefore, Titcombe's appearance after the grooming fairly represented the way he looked at the time of the criminal acts.

█ Titcombe next contends that the pretrial lineup, wherein he was identified as the perpetrator of the bank robbery by several witnesses, was unduly suggestive because he was 3 inches taller than any of the other five participants and the only one with a military haircut. He argues that this suggestiveness mandated the suppression of all testimony concerning these out–of–court identifications. This argument is without merit. Suppression is war-

ranted only where the totality of the circumstances indicates that the lineup was so impermissibly suggestive as to present a very substantial likelihood of mistaken identification. *Manson v. Brathwaite,* 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977); *Neil v. Biggers,* 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972). Here, the fact that the witnesses had an unimpeded view of the robbery suspect for approximately 3 minutes during the commission of the crime and had no trouble identifying Titcombe at the lineup indicates that no likelihood of mistaken identification was occasioned by any suggestiveness in the pretrial confrontation.[1]

Titcombe also maintains that the suggestiveness of the pretrial identification procedure necessitated the suppression of the subsequent in–court identifications by those witnesses who were present at the lineup. This contention has already been resolved adversely to defendant by our prior determination that the lineup was not so suggestive as to create any likelihood of misidentification under the totality of the circumstances.

We also find unconvincing Titcombe's contention that the trial court abused its discretion by refusing to allow the lineup participants to be called as witnesses in order for the jury to determine firsthand whether the identification procedure was impermissibly suggestive. Both defendants presented substantial evidence concerning the identification process, including photos of their respective lineups. The prospective witnesses' testimony would have been cumulative in nature and its exclusion was entirely appropriate. *State v. Weiss,* 73 Wn.2d 372, 438 P.2d 610 (1968); *State v. Freeman,* 17 Wn. App. 377, 563 P.2d 1283 (1977).

Equally unpersuasive is Titcombe's allegation of error regarding the trial court's failure to give his proposed jury

---

[1]After viewing the exceptionally sharp and graphic films taken of defendant during the robbery, we are convinced there could be no question of the defendant's guilt. Consequently, the in–court identification was hardly necessary.

instruction on the possibility of misidentification by the witnesses. The proposed instruction was a slightly modified version of what has become known as the *Telfaire* instruction, from *United States v. Telfaire*, 469 F.2d 552 (D.C. Cir. 1972). This instruction has been specifically rejected by the Washington courts as a comment on the credibility of identification witnesses. *State v. Edwards*, 23 Wn. App. 893, 600 P.2d 566 (1979); *State v. Jordan*, 17 Wn. App. 542, 564 P.2d 340 (1977).

 The final matter presented by Titcombe for our consideration concerns the sufficiency of the jury instruction pertaining to the use of a deadly weapon. Titcombe argues that the trial court erred by failing to instruct the jury that the existence of a deadly weapon is a fact that must be proved beyond a reasonable doubt. *State v. Tongate*, 93 Wn.2d 751, 613 P.2d 121 (1980). We disagree. The testimony of numerous witnesses together with the film of the actual robbery provided overwhelming evidence of Titcombe's use of a knife during the criminal act. Moreover, the sole issue raised by Titcombe's defense was the identity of the robber. He did not dispute the State's allegation regarding the existence of a deadly weapon. Therefore, assuming the issue can be raised for the first time on appeal, the failure to specifically instruct on the State's burden of proof with respect to the deadly weapon verdict was harmless error beyond a reasonable doubt, *State v. Claborn*, 95 Wn.2d 629, 628 P.2d 467 (1981); *State v. Hall*, 95 Wn.2d 536, 627 P.2d 101 (1981).

Having concluded that Titcombe's appeal is without merit, we now turn to the assignments of error raised by Ammlung. Initially, we note that Ammlung's arguments concerning the trial court's failure to give a modified version of the *Telfaire* instruction and refusal to allow the participants in her lineup to be called as witnesses are disposed of by our previous resolution of these issues with respect to Titcombe.

The first unresolved issue raised by Ammlung concerns the trial court's failure to grant her motion for a separate

trial. Ammlung contends that Titcombe's exculpatory testimony on behalf of both defendants in the face of the videotape showing him robbing the bank had a negative effect on her case. More specifically, she argues that Titcombe's testimony placing her in the vicinity of the crimes, in conjunction with her election to exercise her right to remain silent, created a situation where separate trials were necessary to achieve a fair determination of her guilt or innocence pursuant to CrR 4.4(c)(2).[2]

■ We find this argument to be without merit. The granting or denial of a motion for separate trials of jointly charged defendants is entrusted to the sound discretion of the trial court and will not be disturbed on appeal absent a manifest abuse of discretion. *State v. Barry,* 25 Wn. App. 751, 611 P.2d 1262 (1980); *State v. Gosby,* 11 Wn. App. 844, 526 P.2d 70 (1974). Separate trials are not favored in this state and the fact that Ammlung's defense tactic of remaining silent was inconsistent with, or adversely affected by, the defense presented by Titcombe did not constitute grounds for severance. *See State v. Davis,* 73 Wn.2d 271, 438 P.2d 185 (1968); *State v. Carter,* 4 Wn. App. 103, 480 P.2d 794 (1971). Moreover, this court has expressly held that it is not an abuse of discretion to deny severance in situations analogous to the present case, where a nontestifying defendant claims he was "pulled down" by the exculpatory testimony of a codefendant. *State v. Montague,* 10 Wn. App. 911, 521 P.2d 64 (1974); *State v. Carter, supra.*

Ammlung next assigns error to the trial court's granting of a motion in limine which prevented any party from elic-

---

[2]CrR 4.4(c)(2) provides that:

"The court, on application of the prosecuting attorney, or on application of the defendant other than under subsection (i), should grant a severance of defendants whenever:

"(i) if before trial, it is deemed necessary to protect a defendant's rights to a speedy trial, or it is deemed appropriate to promote a fair determination of the guilt or innocence of a defendant; or

"(ii) if during trial upon consent of the severed defendant, it is deemed necessary to achieve a fair determination of the guilt or innocence of a defendant."

iting testimony from the arresting officer regarding a statement she made at the time of her arrest. In this statement Ammlung indicated that she could not talk to the police because of her fear of Titcombe. Ammlung contends that the officer should have been allowed to testify as to this hearsay statement because it was against her penal interest and probative of her state of mind at the time of the arrest. ER 804(b)(3); 803(a)(3).

■ Ammlung's argument is unconvincing. She was obviously attempting to get the statement into evidence to support her contention that she was not the woman who assisted Titcombe in the commission of the crimes. Her state of mind was not at issue and the statement was therefore not admissible under the existing mental state exception to the hearsay rule. ER 803(a)(3); *see also* 5 R. Meisenholder, Wash. Prac. § 473, at 464 (1965). Moreover, the statement is self-serving; the State did not seek admission of any part of it, and Ammlung is the declarant. Such statements are admissible under ER 804(b)(3) only when the declarant is not available. Ammlung cannot create her own "unavailability" by electing not to give evidence on her own behalf.

■ We also find unpersuasive Ammlung's challenge to the sufficiency of the identification evidence in support of her convictions. Circumstantial evidence is sufficient to sustain a robbery conviction. *United States v. Rux,* 412 F.2d 331 (9th Cir. 1969); *State v. Johnson,* 12 Wn. App. 40, 527 P.2d 1324 (1974). In the present case the State presented evidence that a woman was involved in both robberies, that Ammlung discussed a hypothetical bank robbery with Titcombe, that she was with Titcombe in the vicinity of the crimes on the afternoon the robberies took place, and that she and Titcombe were together at the time of their arrests. Although not overwhelming, this circumstantial evidence was sufficient when viewed in the light most favorable to the State, to convince a rational trier of fact of Ammlung's guilt beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980).

In her final allegation of error, Ammlung contends that, even assuming she was the woman accompanying the man who robbed Mrs. Slavich, there was insufficient evidence to support her conviction of second degree robbery in light of the State's failure to give an accomplice instruction in conjunction with that crime. Specifically, Ammlung argues that the lack of any evidence indicating that she used or threatened to use any force or violence upon Mrs. Slavich precluded her conviction as a coperpetrator of the robbery. This argument is also unfounded. Any force or threat, no matter how slight, which induces an owner to part with his property is sufficient to sustain a robbery conviction. *State v. Redmond,* 122 Wash. 392, 210 P. 772 (1922). Here, Mrs. Slavich testified that the female robber blocked her path to the vehicle at the time her keys were taken. This act, in itself, was a sufficient threat of force to support Ammlung's conviction as a coperpetrator of the crime.

For the stated reasons, we affirm.

PETRIE and PETRICH, JJ., concur.