IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31082-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES LELAND FRANCIS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| JARED A. STEFAN, | ) | |
| | ) | |
| Defendant. | ) | |

SIDDOWAY, J. — James Francis appeals his convictions of first degree robbery and second degree robbery, arguing that the prosecutor, in closing argument, impermissibly commented on his exercise of his constitutional rights to a trial and to remain silent. During rebuttal argument, the prosecutor contrasted Mr. Francis's actions following the crimes with those of his accomplice, pointing out that unlike his accomplice, Mr. Francis did not "return home to talk to the police," did not "provide a free talk to the detectives pursuant to an agreement to plead guilty," and did not "enter a plea." Report of Proceedings (RP) (Aug. 9, 2012) at 507. While the trial court sustained an objection to this argument by the defense, Mr. Francis contends that the State persisted with similar

argument that was flagrant, ill-intentioned, and the prejudice from which could not be cured.

The State's argument was objectionable and the defense objection was properly sustained. The argument was raised only in rebuttal, though, and the defendant declined to request a curative instruction or object further. Because he shows no substantial prejudice from those statements that were improper, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

James Francis was charged with first and second degree robbery for two instances of purse snatching in March 2012. In both cases, Mr. Francis grabbed the purses from the victims and his accomplice, Jared Stefan, drove the getaway car.

The evidence against Mr. Francis was overwhelming. It included testimony of eyewitnesses to the purse snatchings, one of whom (a witness to the second crime) correctly noted the license plate of the car being driven by Mr. Stefan. That led police to Mr. Stefan, who admitted his role, pleaded guilty, and testified against Mr. Francis. The evidence also included videotapes of both incidents; text messages between Mr. Francis and Mr. Stefan relating to the crimes; and ultimately, Mr. Francis's own apologetic admission at trial that he committed the crimes due to an addiction to oxycontin and a desperate need for more drugs, and therefore cash, brought on by withdrawal.

At issue was only whether the State could meet its burden of proving two elements beyond a reasonable doubt: first, that Mr. Francis used force in the two crimes and was

2

therefore guilty of robbery, and second, that Mr. Francis caused bodily injury to the first victim, making the crime a first degree robbery.

When the State called Mr. Stefan to testify to his and Mr. Francis's plan and commission of the crimes, he acknowledged making a plea bargain that required him to testify against Mr. Francis, whom he considered a friend. He admitted that as part of his agreement with the State, the charges against him had been reduced from first degree robbery and second degree robbery to, respectively, second degree robbery and first degree theft. He admitted that two of three other charges previously pending against him (one for residential burglary, two for trafficking in stolen property) had been reduced as part of the plea bargain as well.

Asked about events leading up to the crimes, Mr. Stefan testified that he and Mr. Francis met in an inpatient drug rehabilitation program, that both had initially tried to stay sober following their completion of the program with the support of their families, but that both returned to drug use approximately a month later and quickly returned to smoking oxycontin at a cost of about $500 per day. He testified that he and Mr. Francis committed crimes to obtain money for drugs.

Mr. Stefan testified that he and Mr. Francis planned both purse snatchings in advance. He waited in the car on both occasions and did not see Mr. Francis snatch the purse from the first victim but did see him take the purse from the second victim. Significantly for the closing arguments that gave rise to the issue on appeal, Mr. Stefan

3

admitted that the purse snatching from the first victim was a robbery, testifying as

follows:

> Q. Now when you entered this agreement with the state for your testimony, why did you plead guilty to the offense of robbery in the first degree against Sharon Bird?
> A. What do you mean? 'Cause we did it.
> Q. And do you, in fact, believe that you were an accomplice to robbery in that case?
> A. Yeah. Yes.

RP (Aug. 9, 2012) at 357-58.

The lawyers' closing arguments dealt predominantly with the difference between

the crime of robbery and the lesser included crime of first degree theft, which Mr.

Francis's lawyer urged was the crime actually committed and the proper verdict on both

counts.

When Mr. Francis's lawyer gave his closing argument, he admitted that his client

had committed "despicable" crimes. *Id.* at 492. But he emphasized Mr. Francis's

addiction and evidence that he had grabbed the purses from the two women without

threats, violence, or injury to them.

Toward the end of his argument, Mr. Francis's lawyer addressed the testimony

offered against his client by Mr. Stefan. He told the jury that when he initially looked at

his client's case, there were few witnesses who could identify Mr. Francis as being

involved and "I think I could have taken a very different approach with [Mr. Stefan] and

tried to suggest that perhaps he's willing to point the finger at anyone for a significant

4

reduction in his sentence. Significant reduction. But Mr. Francis didn't want to do that."

*Id.* at 499-500. Continuing to credit the conduct of his own client, he argued:

> During voir dire you remember I asked you if you were [in] a position where you were not guilty of a crime and your attorney advised that you didn't have to testify, how many of you would want to anyway? Well, you saw. That's the approach we took. He testified. Although it was incredibly embarrassing, in front of his mother, he's subject to cross-examination. I don't think it was very pleasant. I also don't think it was an evasive strategy. He wanted to take the stand and explain what happened, what he did and what he didn't do. I think that's worthy of serious consideration.
>
> . . . .
>
> Now the state may argue to you . . . that Mr. Stefan took responsibility, pled guilty. I think a couple of things are noteworthy about his arrangement with the state. First, he had other felony matters pending, two counts of first degree trafficking in stolen property and a residential burglary. . . . In agreement for [his plea bargain], he came in and testified as he did. And it may have been—probably was a very smart decision. I think it's interesting that he pled guilty in count 2 to a first degree theft. So if the prosecutor argues that he took responsibility, well he pled guilty to a first degree theft. It's also interesting that he pled guilty to first theft or the incident that he witnessed. For the one that he saw, where he actually saw what happened, he pled guilty to a first degree theft. For the incident that happened behind him that he didn't see, he pled guilty to a robbery. So I ask you to please take that in consideration when deciding how much responsibility he took. He was in a very difficult position, had very little bargaining power and pled to a robbery that he didn't even see if it happened or not.

*Id.* at 500-03.

When it was the prosecutor's turn for rebuttal, he addressed the defense argument

contrasting Mr. Francis's decision to take the stand with Mr. Stefan's decision to make a

deal. He addressed it toward the end of his rebuttal and was interrupted by an objection

that was sustained. His reply to the argument proceeded as follows:

> You should look at the evidence in deciding whether [Mr. Francis] wants to be held responsible. *Unlike Mr. Stefan, he didn't return home to talk to the police. Unlike Mr. Stefan, he didn't provide a free talk to the detectives pursuant to an agreement to plead guilty. Unlike Mr. Stefan, he did not enter a plea and come in—*
>
>     [DEFENSE COUNSEL]: Objection, your Honor.
>     THE COURT: Sustained.
>     [PROSECUTOR]: Unlike Mr. Stefan—and he has the right to a
> trial, I want to be absolutely certain about that, just like we discussed in voir dire. Regardless of the strength of the evidence, Mr. Francis has the right to a fair trial and to be convicted beyond a reasonable doubt. *Mr. Stefan, however, felt that he was responsible for what happened in this case.* And he felt—certainly he felt that he could get the benefit of a bargain. But you could imagine how hard it must be to get on the stand and be what people in jail might call a snitch and give testimony against your friend. It's not easy. And he had to come in here and do that.
>     *Mr. Francis's situation was different. He didn't go home when the police were there, he was found at a McDonald's. His clothing was different. He was not rushing to accept responsibility. Now that he's accused of these crimes, he is saying he should be found responsible only of a lesser crime,* not of the crime of which he's actually guilty, which is robbery in the first degree to Ms. Bird, robbery in the second degree to Ms. Altman, and I hope that you will find him guilty of both those crimes.

*Id.* at 507-08 (emphasis added).

Mr. Francis did not interpose an objection to the latter argument. He did not ask

for a curative instruction.

The jury found Mr. Francis guilty as charged. He appeals.

6

ANALYSIS

Mr. Francis makes two, related assignments of error: he argues that the prosecutor committed misconduct by improperly commenting on his pretrial silence and at the same time improperly commented on his choice not to plead guilty.

Criminal defendants have a constitutional right to remain silent under the Fifth Amendment to the federal constitution, which applies to the states through the Fourteenth Amendment, and under article I, section 9 of the Washington Constitution. *State v. Easter*, 130 Wn.2d 228, 238, 922 P.2d 1285 (1996). The right to remain silent "extends to situations prior to the arrest of the accused." *Id.* at 243. Because "[a] criminal defendant's assertion of his constitutionally protected due process rights is not evidence of guilt," courts have long held that the State may not "invite a jury to infer that a defendant is more likely guilty because he exercised his constitutional rights." *State v. Silva*, 119 Wn. App. 422, 428-29, 81 P.3d 889 (2003).

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to trial by an impartial jury. *State v. Gonzales*, 111 Wn. App. 276, 277, 45 P.3d 205 (2002). A defendant has a right to put the State to its burden of proof at a trial, and "'the State may not draw adverse inferences from the exercise of a constitutional right.'" *State v. Gregory*, 158 Wn.2d 759, 806, 147 P.3d 1201 (2006) (quoting *State v. Rupe*, 101 Wn.2d 664, 705, 683 P.2d 571 (1984)).

"A defendant who alleges improper conduct on the part of a prosecutor must first establish the prosecutor's improper conduct and, second, its prejudicial effect." *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003) (citing *State v. Pirtle*, 127 Wn.2d 628, 672, 904 P.2d 245 (1995)). "Any allegedly improper statements should be viewed within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions." *Id.* (citing *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997)). Prejudice on the part of the prosecutor is established only where there is a substantial likelihood that the instances of misconduct affected the jury's verdict. *Id.*

Even if a prosecutor's comments are improper, absent a proper objection and a request for a curative instruction, the defense waives a prosecutorial misconduct claim unless the comment was so flagrant or ill-intentioned that an instruction could not have cured the prejudice. *State v. Sublett*, 156 Wn. App. 160, 185, 231 P.3d 231 (2010) (citing *State v. Charlton*, 90 Wn.2d 657, 661, 585 P.2d 142 (1978)), *aff'd*, 176 Wn.2d 58, 292 P.3d 715 (2012). Remarks of a prosecutor, even if they are improper, do not warrant reversal if they were invited or provoked by defense counsel and are in reply to his statements, unless the remarks are not a pertinent reply or are so prejudicial that a curative instruction would be ineffective. *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994) (citing *State v. Dennison*, 72 Wn.2d 842, 849, 435 P.2d 526 (1967)).

In making the determination whether a prosecutor has improperly commented on a defendant's right to remain silent, we consider "whether the prosecutor manifestly intended the remarks to be a comment on that right." *State v. Crane*, 116 Wn.2d 315, 331, 804 P.2d 10 (1991). "[A] prosecutor's statement will not be considered a comment on a constitutional right to remain silent if 'standing alone, [it] was so subtle and so brief that [it] did not naturally and necessarily emphasize defendant's testimonial silence.'" *State v. Burke*, 163 Wn.2d 204, 216, 181 P.3d 1 (2008) (some alterations in original) (internal quotation marks omitted) (quoting *Crane*, 116 Wn.2d at 331).

Applying these principles to the prosecutor's comments here, his initial comments, to which Mr. Francis interposed an objection, were improper. While not extensive, they were not subtle and they were not brief enough to be inconsequential. They manifestly were a comment on Mr. Francis's exercise of his rights. In the context of the argument, their only logical relevance was to criticize Mr. Francis for his pretrial silence and his choice not to plead guilty, so we regard them as intentional.

To say they were intentional in that respect is not to say that they were ill-intentioned, however, and in context, we conclude that they were not. The prosecutor did not make the argument until rebuttal. He was clearly responding to defense counsel's effort to contrast what he characterized as Mr. Francis's integrity in standing for trial to take responsibility but explain himself, with Mr. Stefan's choice to enter a plea to resolve his outstanding criminal problems.

9

The prosecutor's argument is somewhat like the argument at issue in *United States v. Tarallo*, 380 F.3d 1174 (9th Cir. 2004), *amended on denial of reh'g*, 413 F.3d 928 (2005), a case cited by Mr. Francis. In that case, the Ninth Circuit Court of Appeals refused to reverse a conviction on the basis of a prosecutor's argument that he had called an accomplice of the defendant to testify "'to give you a view to see somebody who has accepted responsibility for what he did, who has admitted to you, "Yes, I lied. I lied. I knew these were lies, and I continued to make them."'" *Id.* at 1194. The court in *Tarallo* concluded that when construed as an effort by the prosecutor to rehabilitate and enhance the credibility of the accomplice, the comments were not even improper. Here, too, the prosecutor's effort to rehabilitate Mr. Stefan was not improper—where he got in trouble was by following the lead of defense counsel's argument and contrasting Mr. Stefan's actions with those of Mr. Francis.

As to the prosecutor's further comments made after the objection was sustained, some, though not all, were improper. It was (again) not improper for the prosecutor to attempt to rehabilitate Mr. Stefan. And the prosecutor's argument that Mr. Francis's testimony at trial was in an effort to persuade the jury to convict him of a lesser crime, not to take responsibility, was a fair response to the defense closing argument. It is only the prosecutor's argument that Mr. Francis "didn't go home when the police were there" and "was not rushing to accept responsibility" that continued to improperly comment on Mr. Francis's exercise of his constitutional rights. These comments were not met with an

10

objection, however, even though another objection presumably would have been sustained. Mr. Francis must establish that these latter statements were so flagrant and ill-intentioned that he was irreparably prejudiced.

Mr. Francis's failure to request a curative instruction and, in the case of the latter comments, even to object, is dispositive. First, the failure to make a further objection or request a curative instruction suggests that the comments did not appear unduly prejudicial to Mr. Francis's lawyer in the context of trial. *State v. Swan*, 114 Wn.2d 613, 661, 790 P.2d 610 (1990). And in *Jones v. Hogan*, 56 Wn.2d 23, 26, 351 P.2d 153 (1960), the Washington Supreme Court addressed the circumstance of one prompt objection to an improper comment that was sustained, followed by a second improper comment in response to which "[n]o more was asked. Upon the second reference, no action at all was asked of the trial court." When the defendant later complained on appeal that the prosecutor's statements "'denied defendant the right to a fair and impartial trial'" and that "'no instruction to the jury . . . could remove the irreparable damage done by [the] second unwarranted reference'" the court answered:

> If misconduct occurs, the trial court must be promptly asked to correct it. Counsel may not remain silent, speculating upon a favorable verdict, and then, when it is adverse, use the claimed misconduct as a life preserver on . . . appeal.

*Id.* at 27. The circumstances of this case are identical. The answer is the same.

Finally, we disagree completely with Mr. Francis's contention that no curative instruction could erase the prejudice caused by those comments by the prosecutor that were improper. The State's closing arguments account for 18 pages of the verbatim report of proceedings. All of its comments complained of on appeal, not all of which were improper, account for about one page of that argument. The comments were not central to the State's case[1] but were an incompletely-thought-through effort to counter an attack on Mr. Stefan's credibility raised by the defense.

Mr. Francis waived his objection for the most part. To the limited extent that the objection was not waived, he does not demonstrate flagrant, ill-intentioned conduct whose resulting prejudice an instruction could not have cured.

## STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds (SAG), Mr. Francis states four.

His first is that the trial court abused its discretion when it denied his motion to sever the two offenses under CrR 4.4(b). In denying the motion, the court explained that "the presumption in favor of joint trial was not overcome" and that the "possible prejudice to the presentation of the defense case is outweighed by the interest in judicial economy." Clerk's Papers (CP) at 161.

---

[1] Having reviewed the record, we disagree with Mr. Francis's suggestion that the contrast made by the prosecutor in rebuttal paralleled a theme he had been developing through trial.

12

CrR 4.4(b) provides that the trial court must sever offenses if it "determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense." At the same time, "Washington law disfavors separate trials." *State v. McDaniel*, 155 Wn. App. 829, 860, 230 P.3d 245 (2010). The defendant bears the burden of demonstrating in his motion to sever that "a trial involving both counts would be so manifestly prejudicial as to outweigh the concern for judicial economy." *State v. Bythrow*, 114 Wn.2d 713, 718, 790 P.2d 154 (1990).

Trial courts consider the following factors in determining whether the potential for prejudice requires severance: "(1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial." *Russell*, 125 Wn.2d at 63. A trial court's refusal to sever offenses is reviewed for manifest abuse of discretion. *Bythrow*, 114 Wn.2d at 717.

As to the first factor, the strength of the State's evidence for the two counts was similar, as Mr. Francis's lawyer conceded in arguing the motion. RP (Aug. 2, 2012) at 18. There was substantial evidence that Mr. Francis committed both crimes. From Mr. Francis's perspective, there was similar evidence that he had not used force or threats in either. The only difference was that the first victim fell and was injured.

As to the second factor, Mr. Francis argues that the court ignored his different defenses to the two charges, but at the time he argued the motion to sever, he was unsure

13

whether he would even assert different defenses. "A defendant's desire to testify only on one count requires severance only if a defendant makes a 'convincing showing that [he] has important testimony to give concerning one count and a strong need to refrain from testifying about another.'" *Russell*, 125 Wn.2d at 65 (quoting *State v. Watkins*, 53 Wn. App. 264, 270, 766 P.2d 484 (1989)). Here, Mr. Francis offered only unexplained conjecture that he might not take the stand in defense of the first count "depending a lot on how the State's case plays out." RP (Aug. 2, 2012) at 21. In any event, the State responded that "a trial judge has a lot of discretion with cross examination if the defendant wants to remain silent as to one of these two counts," conceding, "I think a trial court has the power to tell me I can't ask about that count, and the defendant can limit his testimony to just one of the charges. The Court can, thereby, limit my cross examination to one of those charges." *Id.* at 23.

As to the third factor, Mr. Francis conceded that it was insignificant in arguing the motion to sever, stating, "We see the Court can properly instruct the jury. There's not an issue there." *Id.* at 18-19.

Mr. Francis places most emphasis on the fourth factor: prejudice from evidence that he argued would not be cross admissible in separate trials. In *Bythrow*, our Supreme Court found that a court's denial of a motion to sever two robbery offenses was proper even though the two crimes were not so similar that evidence of the first would be admissible in prosecution for the second. 114 Wn.2d at 720-21. The court reasoned that

14

"'[w]hen evidence concerning the other crime is limited or not admissible, our primary concern is whether the jury can reasonably be expected to "compartmentalize the evidence" so that evidence of one crime does not taint the jury's consideration of another crime,'" it held that "the defendant must be able to point to specific prejudice." *Id.* (quoting *United States v. Johnson*, 820 F.2d 1065, 1071 (9th Cir. 1987)). Mr. Francis points to no specific prejudice.

Mr. Francis's second ground identified in his SAG is that the trial court abused its discretion by failing to give a curative instruction after Officer Dustin Howe, when asked about the injury suffered by the first purse snatching victim, stated, "I want to say she said something to the effect like she felt like she got hit by a truck." RP (Aug. 7, 2012) at 163. Mr. Francis's lawyer objected to this statement, and the court sustained the objection. Mr. Francis contends that sustaining the objection was not enough; that "[a] curative instruction is needed or prejudice must be presumed" and that the officer's testimony was "prejudicial and inflammatory." SAG at 11-12.

Mr. Francis cites no authority in support of the proposition that the trial court needed to do more than sustain the objection. The trial court's concluding instructions to the jurors reminded them that "[i]f evidence was not admitted . . . , then you are not to consider it in reaching your verdict." CP at 192. And "[a] party who fails to ask for a limiting instruction waives any argument on appeal that the trial court should have given the instruction." *State v. Stein*, 140 Wn. App. 43, 70, 165 P.3d 16 (2007).

15

Mr. Francis's third ground is that the trial court abused its discretion when it "chose to ignore" an inquiry by the jury during deliberations as to the legal definition of force. SAG at 13. The trial court did not ignore the inquiry. It responded, telling the jury to "[p]lease continue deliberations. You are to consider only the testimony of the witnesses, the exhibits admitted into evidence, and the instructions of the court." CP at 222.

Mr. Francis suggests that the failure to define "force" denied him a fair trial, citing *State v. O'Donnell*, 142 Wn. App. 314, 174 P.3d 1205 (2007). But as *O'Donnell* points out, "whether the words used in an instruction require further definition is a matter of judgment to be exercised by the trial court"; "[i]n a criminal case . . . the trial court is required to define technical words and expressions, but not words and expressions which are of common understanding and self-explanatory"; and "[a] term is considered technical when its legal definition differs from the common understanding of the word." *Id.* at 325. *O'Donnell* held, as had earlier cases, that "theft" was a term of common understanding and self-explanatory.

"Force" is similarly a word of common understanding and self-explanatory. And the court's instructions informed the jury, consistent with RCW 9A.56.190, that the "force or fear" used in committing a robbery "must be used to obtain or retain possession of the property or to prevent or overcome resistance to the taking, in either of which case

16

the degree of force is immaterial." CP at 205 (Instruction 12). The trial court did not abuse its discretion in declining to define the term further in response to the jury inquiry.

Mr. Francis's fourth ground is essentially that the jury's verdicts were not supported by substantial evidence where the State did not prove beyond a reasonable doubt that he used force.

As previously observed, the degree of force used or threatened in a robbery is immaterial. RCW 9A.56.190. "'Any force or threat, no matter how slight, which induces an owner to part with his property is sufficient to sustain a robbery conviction.'" *State v. Collinsworth*, 90 Wn. App. 546, 553-54, 966 P.2d 905 (1997) (quoting *State v. Ammlung*, 31 Wn. App. 696, 704, 644 P.2d 717 (1982)).

Mr. Francis emphasizes that his first victim testified that her purse was taken off her shoulder so fast she did not "even remember turning [her] head." RP (Aug. 7, 2012) at 93. But she also testified that she "struggled" to hold onto her purse, and stated, "I feel I was pulled to the ground because I was holding on for dear life." *Id.* at 82. A witness to the incident testified that the victim was "holding on so hard that she fell over when he pulled the purse away from her." *Id.* at 132.

The victim of the second incident testified that, as she was leaving the store, she "sensed something" over her shoulder and the next thing she saw was her purse "going off the end of my arm." RP (Aug. 8, 2012) at 236-37. When asked, "[D]id the purse come off your arm because of your relaxation? Or was there some other force applied to

17

it?" she answered, "No, it was on my shoulder." *Id.* at 238. Mr. Francis also testified that he ran toward the second victim and used two hands to grab her purse. RP (Aug. 9, 2012) at 420-23. While he said that he grabbed the purse from the side "so it would be quick and easy and I didn't have to hurt anybody," *id.* at 422, injury is not required to establish a robbery. Mr. Francis admitted that it required some level of force to remove the purse from her hand. While another jury might have reached a different verdict, the evidence presented was sufficient to support this jury's verdicts.

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Kulik, J.