IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79215-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| TAKAO, FRANCO ALLI, | ) | |
| DOB: 02/21/1985, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Franco Alli Takao appeals his conviction for second degree robbery. He argues that the court denied him his constitutional right to a unanimous jury verdict by failing to give a unanimity instruction. Because Takao's actions were a continuing course of conduct, no unanimity instruction was required. We affirm.

FACTS

On the evening of September 3, 2018, Stefani Salvadalena drove her 89-year-old roommate Floyd Olson to a Bank of America ATM.[1] Salvadalena waited in the car while Olson withdrew $200 from the machine. Olson walked back toward the car carrying the cash in his hand.

_____

[1] Automated teller machine.

Citations and pin cites are based on the Westlaw online version of the cited material.

Takao approached Olson and struck up a conversation. A nearby witness, Stefanie Vitous, testified that she could see the money in Olson's hand as the two men spoke. Salvadalena became suspicious of Takao and opened her door to tell Olson to get in the car.

Olson testified that Takao then "put a hand on me, and gave me a shove, and grabbed the money, and ran." Olson also testified that he had a "grip" on the money and Takao "jerked it" out of his hand. Olson stated he fell when Takao pushed him on his shoulder and again when he tried to chase Takao.

Salvadalena initially testified that she saw Takao "swiftly, in one quick motion, push[ ] at Floyd, and then grab[ ] his money out of his hand. Floyd fell to the ground." She later clarified that she did not necessarily see the push. Vitous said she did not see Takao push Olson but she looked up when she heard a noise "like a grunt" and saw Olson "on all fours" as Takao fled. Jesus Ovalle was standing across the street. He heard Salvadalena scream and rushed over to find Olson lying on the ground and Takao running away. Ovalle gave chase but was unable to catch Takao. Vitous called 911.

A police K-9 unit found Takao hiding nearby with the cash. Olson, Vitous, and Ovalle all positively identified Takao as the person who took Olson's money. Video evidence from a Bank of America security camera showed Olson fall to the ground, but the camera was too far away and not of sufficient quality to capture the incident in its entirety.

The State charged Takao with second degree robbery. At trial, Takao admitted that he took the money. But he argued that there was conflicting

2

evidence as to whether he pushed Olson and that he did not use force to take Olson's money. Takao argued that he simply grabbed the money from Olson's hand, an act that is not legally sufficient to convict him of robbery. In rebuttal, the State argued that even assuming Takao did not push Olson, the evidence was sufficient to support a conviction of robbery.

The court instructed the jury as to the elements of both second degree robbery and the lesser charge of theft in the first degree. The court instructed the jury that to convict Takao of robbery in the second degree, they needed to find that "force or fear was used by the defendant to obtain or retain possession of the property or to prevent or overcome resistance to the taking."

The jury found Takao guilty of robbery in the second degree. The court sentenced Takao to a standard-range sentence of four months. Takao appeals.

ANALYSIS

Takao argues that the court erred by failing to instruct the jury on unanimity. We disagree.

Criminal defendants in Washington have a constitutional right to a unanimous jury verdict. CONST. art. 1, § 21; State v. Smith, 159 Wn.2d 778, 783, 154 P.3d 873 (2007). If the State presents evidence of multiple acts of misconduct that could support conviction of a single count, the State must elect a single act on which it will rely or the trial court must instruct the jury that it must unanimously agree that the State proved a specific criminal act beyond a reasonable doubt. State v. Coleman, 159 Wn.2d 509, 511-12, 150 P.3d 1126 (2007). But in cases involving a " 'continuing course of conduct,' " the State does

3

not need to elect a single act nor does a trial court need to provide a unanimity instruction. State v. Handran, 113 Wn.2d 11, 17, 775 P.2d 453 (1989) (quoting State v. Petrich, 101 Wn.2d 566, 571, 683 P.2d 173 (1984), abrogated on other grounds by State v. Kitchen, 110 Wn.2d 403, 756 P.2d 105 (1988)).

To determine whether multiple acts constitute a continuing course of conduct, we evaluate the facts in a "commonsense manner." Handran, 113 Wn.2d at 17. We consider the time separating the criminal acts as well as whether the criminal acts involved the same parties, location, and ultimate purpose. State v. Love, 80 Wn. App. 357, 361, 908 P.2d 395 (1996). Evidence that the charged conduct occurred at different times and places tends to show that several distinct acts occurred, while evidence that a defendant engaged in a series of actions intended to secure the same objective supports a continuous course of conduct. State v. Fiallo-Lopez, 78 Wn. App. 717, 724, 899 P.2d 1294 (1995).

Olson testified that Takao "put a hand on me, and gave me a shove, and grabbed the money, and ran." Salvadalena testified that Takao acted "swiftly, in one quick motion." The Bank of America security video shows that the events occurred in less than a minute. Takao's actions were clearly a continuing course of conduct.

However, Takao claims that the prosecutor's rebuttal argument focused the jury on only one act—taking money from Olson's hand—to convict him. Takao contends that taking money from a person's hand is not a legally sufficient use of force to support his robbery conviction and that failure to give a unanimity

4

instruction renders the jury verdict ambiguous as to whether the jury relied on that legally insufficient act to convict him. Takao's argument is not persuasive.

The prosecutor did not urge the jury to focus on just one act of force during closing argument. The prosecutor consistently maintained that the evidence showed Takao pushed Olson and he addressed the incident as a continuing course of conduct. However, in Takao's closing argument, defense counsel maintained that the State did not present sufficient credible evidence to prove that Takao pushed Olson. Counsel then argued that taking money from Olson's hand is not a sufficient act of force to convict Takao of robbery.

In response, the prosecutor reminded the jury that Olson "said he was pushed, the money was taken, and the shoulder — distinctive — hand on his shoulder, pushed." The prosecutor then turned to Takao's theory of the case:

> Let's assume [Olson] wasn't pushed. Never touched. Still a robbery.
> . . . [Olson] was holding [money] in his hand, using force to keep his money. . . . Theft is when it was yanked out of his hand. That's the force.
> Theft in the First Degree is a pickpocket. . . . [T]he defendant . . . yanks it out of the pocket, doesn't use any force . . . . Mr. Takao, [he] yanked the money from [Olson]'s hand, that still is a robbery.

The prosecutor's rebuttal was not an effort to encourage the jury to focus on the single act of taking money from Olson's hand. It was plainly an attempt to address the facts as argued by the defense, should the jury find them to credible.

Regardless, the act of taking money from Olson's hand under the circumstances of this case is sufficient evidence of force to support a conviction of robbery in the second degree. "Evidence is sufficient to support a conviction if,

after viewing the evidence in the light most favorable to the State, it allows any rational trier of fact to find all of the elements of the crime charged beyond a reasonable doubt." State v. DeVries, 149 Wn.2d 842, 849, 72 P.3d 748 (2003). A person commits robbery when

> he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.

RCW 9A.56.190.

Takao argues that the force used to take the money from Olson's hand was only that necessary to effectuate the transfer of property and, therefore, cannot be sufficient to support a conviction for robbery. But Olson testified that he was holding his money "in a grip." He said that Takao pushed him on the shoulder, grabbed the money, and "jerked" the cash from his hand. Any force, however slight, which induces the victim to relinquish his property, is sufficient to sustain a robbery conviction. State v. Ammlung, 31 Wn. App. 696, 704, 644 P.2d 717 (1982). Viewing this evidence in a light most favorable to the State, a juror could find beyond a reasonable doubt that Takao used force to overcome Olson's resistance to the taking.

Because Takao engaged in a continuing course of conduct, no unanimity instruction was required. We affirm the second degree robbery conviction.

Brunner, J

WE CONCUR:

Andrus, A.C.J.

Dwyer, J.