[No. 39057-1-I. Division One. December 1, 1997.]

THE STATE OF WASHINGTON, *Respondent,* v. DANIEL W. COLLINSWORTH, *Appellant.*

*James R. Dixon* of *Nielsen, Broman & Associates, P.L.L.C.*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Stephen G. Teply, Deputy*, for respondent.

PER CURIAM — Daniel Collinsworth entered several banks and ordered a teller to give him various denominations of currency. Following a bench trial, the trial court found him guilty of 5 counts of second degree robbery and one count of attempted second degree robbery. On appeal, Collinsworth concedes that he was guilty of first degree theft, but argues that the evidence was insufficient to establish robbery.

Even though he made no overt threatening gestures and did not display a weapon, Collinsworth's unequivocal demands for immediate surrender of the bank's money, under the circumstances of this case, were sufficient to support the trial court's findings that he took the bank's property through the use or threatened use of "immediate force, violence, or fear of injury." Accordingly, we affirm.

Collinsworth was charged by amended information with five counts of second degree robbery and one count of attempted second degree robbery and, alternatively, with five counts of first degree theft and one count of attempted first degree theft. He waived his right to a jury, and the case was tried to the bench.

Count 1

On December 30, 1995, Collinsworth entered a Seattle branch of Washington Mutual Bank and approached teller Michael Hoiland. Collinsworth, who appeared to be "very nervous" and "fidgety," told Hoiland in a "serious" tone of voice, "I need your hundreds, fifties and twenties." When Hoiland paused, unsure of what to do, Collinsworth said, "I'm serious." As Hoiland started retrieving currency, Collinsworth added, "No bait, no dye."

Because Collinsworth was wearing baggy clothing, Hoiland could not determine whether he had a weapon; Collinsworth did not put his hands in his pocket or otherwise indicate that he had a weapon. Hoiland perceived Collinsworth's words to be an ultimatum or threat to harm other employees or customers if he did not comply.

Hoiland explained that Washington Mutual has a policy requiring tellers to comply with any demand or request for money, whether or not a weapon is displayed. Hoiland stated that he complied with Collinsworth's demand because of the bank policy and because of the perceived threat.

Count 2

On January 17, 1996, Collinsworth entered another

Washington Mutual branch, approached teller Steven Suk-Nam Peterson, and demanded, "Give me your hundreds, fifties and twenties." When Peterson replied, "Excuse me?", Collinsworth repeated, "Give me your hundreds, fifties and twenties." Peterson's "blood started pumping," and he felt "pretty shaken or shocked" that a robbery was occurring.

After Peterson placed $20 and $50 bills on the counter, Collinsworth said, "Give me your hundreds." When Peterson replied that he did not have any, Collinsworth grabbed the money and walked out of the bank. According to Peterson, Collinsworth appeared "a little nervous" and used a "direct and demanding" voice, leaning in Peterson's direction. Although Collinsworth did not mention a weapon or make threats, Peterson felt that that he probably had a gun. Peterson was concerned for his own safety and the safety of others in the bank, and the bank's policy was not the sole reason he complied with Collinsworth's demands.

## Count 3

Collinsworth also entered the Ballard branch of Washington Mutual on January 17, 1996. He approached one of the teller windows and said to George Wang, "Give me all your fifties and hundreds." At first, Wang did not understand, and Collinsworth repeated the demand. Wang then grabbed his loose $100 bills and handed them to Collinsworth. He explained that he cooperated with Collinsworth because of the bank's policy and because he did not want to jeopardize himself or the bank's customers. Wang felt that there was a possibility that Collinsworth had a weapon, but he could not tell for sure.

## Count 4

Agatha Lidzbarski, a teller at the University branch of Key Bank, testified that on August 5, 1995, Collinsworth approached her window, placed a green cloth bag on the counter, and asked her in a low voice to fill it with "hundreds and fifties," with "no dye packs." After Lidz-

barski put the $100 and $20 bills from her drawer on the counter, Collinsworth gathered up the money and left. Because Collinsworth was wearing a baggy sweatshirt and held one hand near his waist, Lidzbarski was concerned that he might have a weapon. Even if Key Bank did not have a policy, Lidzbarski would have complied with Collinsworth's demand because she was afraid that he might become angry and harm someone.

## Count 5

On August 4, 1995, Collinsworth entered the University branch of First Interstate Bank and approached teller Anabelle Meneses' window. Collinsworth handed Meneses a bag and told her, in a "regular" tone of voice, to fill it. Meneses felt threatened, but could not determine whether Collinsworth was armed. When Meneses was unable to find the keys to her cash drawer and people began lining up, Collinsworth told her to "forget it" and left.

## Count 6

Collinsworth again entered the University branch of First Interstate Bank on August 23, 1995. He approached a teller window and told Maxwell Bloesser, in a "firm, direct" voice, "[g]ive me your twenties, fifties, and hundreds." When Bloesser asked if he was serious, Collinsworth replied "yes" and added, "Don't give me a dye pack." Bloesser then handed over the cash to Collinsworth, who put it in a green cloth sack and left the bank. Bloesser went out of the bank after Collinsworth and followed him for several blocks. Although Bloesser did not think he would be shot if he did not comply with Collinsworth's demands, he was concerned that others in the bank might be hurt.

During closing argument, defense counsel argued that Collinsworth was guilty only of first degree theft and first degree attempted theft because there was no evidence that he obtained bank property through the use or threatened use of immediate force, violence, or fear of injury. The trial court disagreed, finding that in each incident, Col-

linsworth's actions demonstrated an intent to create fear and induce bank employees to hand over the money. The court further found that Collinsworth's conduct created actual apprehension and fear in the bank tellers, that such fear was objectively reasonable under the circumstances, and that each teller would have handed over the money even without a bank policy requiring compliance with a robber's demands. The court entered extensive written findings of fact and conclusions of law addressing each count.

In order to establish robbery, the State was required to prove, among other things, that Collinsworth took bank property "by the use or threatened use of immediate force, violence, or fear of injury . . . ."[1] Collinsworth argues that this element was not established because he expressed no threats to any of the tellers, displayed no weapon, made no threatening gestures, and demanded the money in a "calm" voice. He maintains that his conduct did not constitute robbery merely because he was able to "exploit" a weakness in the banks' operating procedure, which required tellers to comply with any demands for money. He requests that his robbery convictions be vacated and that the case be remanded for resentencing on convictions for first degree theft and first degree attempted theft.

It has long been the rule in Washington that

> if the taking of the property be attended with such circumstances of terror, or such threatening by menace, word, or gesture as in common experience is likely to create an apprehension of danger and induce a man to part with property for the safety of his person, it is robbery.[2]

As the parties have noted, however, there are no Washing-

---

[1]RCW 9A.56.190 provides that a person commits robbery "when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial."

[2]*State v. Redmond*, 122 Wash. 392, 393, 210 P. 772 (1922).

ton cases that address the evidence necessary to establish robbery in circumstances where the defendant does not utilize overt physical or verbal threats or display a weapon.

But federal courts have frequently addressed the issue in the analogous context of bank robbery under 18 U.S.C. § 2113(a), which criminalizes the taking of property from a bank "by force and violence, or by intimidation."[3] Taking by "intimidation" is "the willful taking in such a way as would place an ordinary person in fear of bodily harm,"[4] and courts have repeatedly rejected the contention that express threats of bodily harm, threatening bodily gestures, or the physical possibility of a concealed weapon are required to establish bank robbery under 18 U.S.C. § 2113(a).

In *United States v. Lucas*,[5] the defendant entered the bank and placed two plastic shopping bags on a teller counter along with a note that read, "Give me all your money, put all your money in the bag." The defendant then told the teller, "Put it in the bag." On appeal, the defendant argued that the theft did not involve force, violence, or intimidation because there was no act on his part other than opening the bag and requesting the money. The court summarily rejected this argument, noting that the defendant's written and oral demands, in conjunction with the teller's testimony that she was terrified, constituted sufficient evidence to permit the jury to find a taking by intimidation.[6]

A similar result under comparable facts was reached in

---

[3]The predecessor to 18 U.S.C. § 2113(a) proscribed the taking of property by "putting in fear." The change to "intimidation" has been characterized as technical rather than substantive. *United States v. Robinson*, 527 F.2d 1170, 1172 n.2 (6th Cir. 1975).

[4]*United States v. Bingham*, 628 F.2d 548, 548 (9th Cir. 1980); *see also United States v. Harris*, 530 F.2d 576, 579 (4th Cir. 1976); *United States v. Higdon*, 832 F.2d 312, 315 (5th Cir. 1987).

[5]963 F.2d 243 (9th Cir. 1992).

[6]*Lucas*, 963 F.2d at 248.

*United States v. Hopkins*,[7] where the defendant entered the bank and presented a note that stated, "Give me all your hundreds, fifties and twenties. This is a robbery." When the teller replied that she had no hundreds or fifties, the defendant replied, "Okay, then give me what you've got." The defendant then left the bank in a "nonchalant manner." The teller testified that she felt frightened for her unborn child. On appeal, the court rejected the defendant's contention that his conduct and demeanor were insufficient to support a conviction for robbery, concluding that even though the defendant spoke calmly, made no threats, and was clearly unarmed, the implicit threats in his written and oral demands constituted sufficient evidence of intimidation to support the verdict.[8]

 Under the circumstances of this case, the fact that Collinsworth did not display a weapon or overtly threaten the bank tellers does not preclude a conviction for robbery. "The literal meaning of words is not necessarily the intended communication."[9] In each incident, Collinsworth made a clear, concise, and unequivocal demand for money. He also either reiterated his demand or told the teller not to include "bait" money or "dye packs," thereby underscoring the seriousness of his intent. No matter how calmly expressed, an unequivocal demand for the immediate surrender of the bank's money, unsupported by even the pretext of any lawful entitlement to the funds, is fraught with the implicit threat to use force.[10] "Any force or threat, no matter how slight, which induces an owner to part with

---

[7]703 F.2d 1102 (9th Cir. 1983).

[8]*Hopkins*, 703 F.2d at 1103; *see also United States v. Robinson*, 527 F.2d 1170 (6th Cir. 1975) (evidence that defendant appeared nervous, gave teller black pouch, and said, "give me all your money," sufficient to establish intimidation under 18 U.S.C. § 2113(a)).

[9]*State v. Scherck*, 9 Wn. App. 792, 794, 514 P.2d 1393 (1973).

[10]*See United States v. Henson*, 945 F.2d 430, 439-40 (1st Cir. 1991).

his property is sufficient to sustain a robbery conviction."[11] The trial court's findings that the tellers were fearful of immediate injury and would have handed over the money even without the policy requiring compliance are unchallenged on appeal.

*United States v. Wagstaff*,[12] relied upon by Collinsworth, is factually distinguishable. In *Wagstaff*, the defendant entered a bank, put on a ski mask, walked into the tellers' area, and started removing money from a cash drawer. There was no teller nearby, and the defendant did not say anything or present a note. Thus, the issue was whether a teller's subjective fear, standing alone, was sufficient to establish a taking by intimidation.[13]

In this case, Collinsworth expressed his demands for money directly to the teller. Viewed in the light most favorable to the State, the evidence was sufficient to support the trial court's findings that Collinsworth obtained bank property through the use or threatened use of "immediate force, violence or fear of injury."

Affirmed.

Review denied at 135 Wn.2d 1002 (1998).

---

[11]*State v. Ammlung*, 31 Wn. App. 696, 704, 644 P.2d 717 (1982) (defendant's blocking of victim's path to car at time keys were taken was sufficient threat of force, standing alone, to support conviction for robbery).

[12]865 F.2d 626 (4th Cir. 1989).

[13]865 F.2d at 629 (where defendant did not have a weapon, did not produce a note or say anything, and did not make threatening gestures, evidence insufficient to establish "intimidation").