## IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,                )
                                             )    DIVISION ONE
              Respondent,       )
                                             )    No. 76468-3-I
            v.                  )
                                           )    UNPUBLISHED OPINION
ZACHARY SCOTT RANAHAN,          )
                                           )
              Appellant.        )    FILED: July 23, 2018
_____ )

DWYER, J. — Zachary Ranahan appeals his conviction of robbery in the second degree. He argues that the evidence presented by the State was insufficient to prove beyond a reasonable doubt that he threatened to use force when taking money from a barista. Viewing the evidence in the light most favorable to the State, we conclude that it is sufficient to support the jury's guilty verdict. We affirm.

I

On March 15, 2016, at approximately 5:45 p.m., Zachary Ranahan walked up to the ordering window of Bellingham's Buzz Thru coffee stand. Like many such coffee stands, the only way to interact with the Buzz Thru's barista is through this ordering window. While the stand has a door, it remains locked from the inside during business hours.

Alexandra Zuzich, the 24-year-old barista on duty that night, took Ranahan's order. She then partially closed the window, turned around, and

began gathering the ingredients to make his drink. Approximately 45 seconds later, a loud noise interrupted her preparations. As Zuzich turned around, she saw the bell normally on the stand's counter fly across the room, crashing into the wall. She also saw Ranahan. Whereas before he had been standing outside of the stand, he was now inside, approximately three feet away from her. Uninvited, he had climbed through the window, knocking the bell over in the process.

Ranahan made no verbal threats. He made no threatening gestures. He displayed no weapon. But Zuzich was scared. She could not remember Ranahan's exact words, but did remember that he asked about the cash register and money. Following her training, Zuzich opened the register. When Ranahan turned away from her to begin taking the cash from the register, Zuzich immediately climbed out of the ordering window, cutting her leg in the process.[1] She then gained the attention of a passerby, who called the police to report the crime on Zuzich's behalf. Zuzich had left her personal cell phone in the stand as she made her escape.

At trial, the jury convicted Ranahan of robbery in the second degree and burglary in the second degree. The burglary conviction merged into the robbery conviction at sentencing. Ranahan appeals, contending that the evidence is not sufficient to sustain his conviction for robbery. He does not challenge the burglary conviction.

---

[1] Ranahan stood between Zuzich and the door. The door was locked, and could only be unlocked via a hidden key. Zuzich's cut required eight stitches.

II

The due process clauses of the federal and state constitutions require the government to prove each element of a crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3. When deciding if the evidence is sufficient to sustain a conviction, a reviewing court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct.2781, 61 L.Ed.2d 560 (1979).

"A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences from that evidence." State v. Boyle, 183 Wn. App. 1, 6-7, 335 P.3d 954 (2014) (citing State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). We must "defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). Circumstantial and direct evidence receive equal weight on review. Thomas, 150 Wn.2d at 874.

The jury convicted Ranahan of robbery in the second degree. "A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone." RCW 9A.56.190. It is the

element of force that differentiates robbery from theft. "While both offenses involve stealing money or property, theft is elevated to robbery where the defendant uses force or threatened force to take the property." State v. Farnsworth, 185 Wn.2d 768, 771, 374 P.3d 1152 (2016). "Any force or threat, no matter how slight, which induces an owner to part with his property[,] is sufficient to sustain a robbery conviction." State v. Handburgh, 119 Wn.2d 284, 293, 830 P.2d 641 (1992).

A threat of force may be implied. This is an objective standard. If "an ordinary person in the victim's position could reasonably infer a threat of bodily harm from the defendant's acts," an implied threat exists. State v. Witherspoon, 180 Wn.2d 875, 884, 329 P.3d 888 (2014). Prior decisions have often found implied threats to exist in the context of bank robberies. See, e.g., Farnsworth 185 Wn.2d at 771 (bank robber implied a threat by handing a note asking for money, but not stating a threat); State v. Collinsworth, 90 Wn. App. 546, 549, 966 P.2d 905 (1997) (bank robber implied threat by demanding "Give me your hundreds, fifties and twenties"). While this form of bank robbery does not involve a specific threat, but rather a request, the historical context of bank robberies makes it reasonable for a teller to imply a threat of force. Farnsworth, 185 Wn.2d at 776-77. Outside of the bank robbery context, prior decisions have also found implied threats to exist when individuals insinuate they possess weapons. See, e.g., Witherspoon, 180 Wn.2d at 885 (finding an implied threat when a man had his hand behind his back and said he had a pistol). But these situations do not mark the totality of situations in which an implied threat may be found. "In every

4

[robbery] case, the circumstances will be unique and context-dependent, causing courts to determine whether the evidence supports an objective finding of a threat." Farnsworth, 185 Wn.2d at 779. Here, viewing the evidence of Ranahan's conduct in the light most favorable to the State, context supports the jury's conclusion that a threat of force was implied.

First, the evidence supports a determination that Zuzich subjectively felt fear. Ranahan believes that this cannot be the case because Zuzich followed her training in opening the register when he requested money. This argument, however, fails to consider the possibility that Zuzich followed her training out of fear of injury. The evidence reasonably supports this latter reading. In addition to her explicit statements to this effect, there is context. Zuzich is only five-foot-one. She was 24 years old at the time of the robbery. A man larger than her had forced his way into her locked workplace and stood a mere three feet away. He was the only other person inside the small, locked building. Her subsequent actions—jumping out the window, resulting in a severe cut to her leg, and leaving her cell phone inside the stand—are testament to the genuine basis of her claimed fear.

The evidence, construed in the light most favorable to the State, also supports the conclusion that Zuzich's subjective fear was objectively reasonable. Viewed objectively, Ranahan's actions implied a threat of force. Unlike the bank robber in Farnsworth, who stood in a public area when he handed the demand note to the bank teller, Ranahan acted more ominously. Ranahan was not outside the coffee stand when he made his request. By climbing through the

ordering window and into the coffee stand itself, Ranahan violated a societal norm. He entered an area where he had no right to be. By taking this step, an objective observer could reasonably conclude that he was prepared to violate additional societal norms. A request for money takes on a different light when made in this context, let alone in the confines of a small, locked building a few feet away from the money's custodian.

Indeed, Ranahan did go further. He demanded access to money to which he had no lawful claim. This demand was

> laden with inherent intimidation. When a person demands money at a bank,[2] with no explanation or indication of lawful entitlement to money, it can imply a threat of force because without such a threat, the teller would have no incentive to comply. An ordinary bank teller could reasonably infer an implied threat of harm under these circumstances.

Farnsworth, 185 Wn.2d at 771-72.

Viewing the evidence of Ranahan's conduct in the light most favorable to the State, it is sufficient to support a rational jury's finding that he took property from the Buzz Thru coffee stand by the threatened use of force.

Affirmed.

WE CONCUR:

---

[2] The quoted statement applies equally to a drive-thru coffee stand and the barista working therein.