IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35960-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL R. MINGS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

FEARING, J. — Under RCW 10.61.006, a defendant has the right to a lesser
included offense instruction to the jury under limited circumstances. In this appeal, we
address whether Michael Mings' conduct supported a ruling that third degree theft was a
lesser included offense of second degree robbery. We hold in the negative and affirm the
trial court.

## FACTS

At 4:00 a.m., Michael Mings entered a 24-hour Rite Aid store and walked to the
pharmacy counter. Pharmacist Thomas Keefe worked alone in the store pharmacy.
Keefe noticed Mings to be agitated. Mings approached the pharmacy window and asked
Keefe if the pharmacy possessed blue oxycodone pills. Blue pills deliver a higher dose of

the opioid. Keefe scanned the drug safe and responded affirmatively. Mings then silently handed Keefe a handwritten card: "GIVE ME THE BOTTLES FOR OXYCODONE 30 mg . . . And Boxes of Fentanyl patches. I don't want to hurt you or myself. Make it in less than a minute. Nothin Funny." Ex. 6.

Thomas Keefe testified at trial that he felt threatened by Michael Mings' note and feared for his and Michael Ming's safety. Pharmacist Keefe returned to the drug safe and grabbed three "tracker bottles" from a pressure-sensitive plate that immediately sent a silent alarm to law enforcement. Report of Proceedings at 117-18. The bottles contained pills other than controlled substances. Mings took the bottles and turned to leave, but, before he left the store, he examined the pills. He returned to the pharmacy counter and informed Keefe that he received the wrong pills. Keefe replied that the delivered pills were the only oxycodone in the safe. Mings left the store.

The State of Washington charged Michael Mings with second degree robbery. He testified at trial that he attempted to write the demand note so that Thomas Keefe would not feel threatened. Defense counsel proposed lesser included jury instructions for first degree theft and third degree theft. The trial court denied both requests. The court ruled that first degree theft did not satisfy the legal test for a lesser included offense and that the evidence did not justify a third degree theft instruction. The jury returned a guilty verdict for second degree robbery.

DISCUSSION

On appeal, Michael Mings challenges only the trial court's denial of his proposed jury instruction on third degree theft. A party requesting a lesser included offense instruction must satisfy a two-pronged test, also known as the *Workman* test: (1) a legal prong that requires a showing that all elements of the lesser offense are necessary elements of the charged offense; and (2) a factual prong that requires production of evidence that supports an inference that *only* the lesser crime was committed to the exclusion of the greater crime charged. *State v. Condon*, 182 Wn.2d 307, 316, 343 P.3d 357 (2015); S*tate v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). If both prongs are satisfied, the requesting party is entitled to the lesser included offense instruction. *State v. Condon*, 182 Wn.2d at 316.

The State and Michael Mings agree to the fulfillment of the first prong of the *Workman* rule because the elements of third degree theft are necessary elements of second degree robbery. Third degree theft includes the elements of wrongful taking of the property of another with intent to deprive and the property is no more than $250 in value. RCW 9A.56.020(1)(a), .050(1)(a). The elements of second degree robbery include unlawful taking of another's property in his or her presence by the use or threatened use of force or fear. RCW 9A.56.190, .210. Consequently, we confine our analysis to the second prong of the *Workman* rule.

3

To determine whether the evidence suffices to support the giving of an instruction, we view the evidence in the light most favorable to the party requesting the instruction. *State v. Henderson*, 182 Wn.2d 734, 742, 344 P.3d 1207 (2015); *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000). Specifically, a lesser included offense instruction should be given if the evidence would permit a rational juror to find the defendant guilty of the lesser offense and not guilty of the greater offense. *State v. Fernandez-Medina*, 141 Wn.2d at 456; *State v. Warden*, 133 Wn.2d 559, 563, 947 P.2d 708 (1997). We review the trial court's decision regarding the factual prong of the *Workman* rule for abuse of discretion. *State v. Henderson*, 182 Wn.2d at 743.

The distinguishing element between robbery and theft is the use or threatened use of force. *State v. Farnsworth, Jr.*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016). A person commits robbery when he or she unlawfully takes property from another person by the use or threatened use of immediate force or fear of injury. RCW 9A.56.190. Theft, the wrongful taking of another's property with the intent to deprive, does not require any use of force. RCW 9A.56.020(1)(a). Although the threat of force in a robbery is usually explicit, sometimes the accused implies the threat by communication or conduct. *State v. Farnsworth*, 185 Wn.2d at 776.

We must decide whether the demand note Michael Mings handed to pharmacist Thomas Keefe contained an implied threat of force or injury. To determine whether a threat was implied, we ask if an ordinary person in the victim's position could reasonably

4

infer that the note threatened bodily harm. *State v. Farnsworth*, 185 Wn.2d at 776; *State v. Witherspoon*, 180 Wn.2d 875, 884, 329 P.3d 888 (2014). An unequivocal demand, unsupported by the pretext of any lawful entitlement to the controlled substances, constitutes an implicit threat to use force. *State v. Collinsworth*, 90 Wn. App. 546, 553, 966 P.2d 905 (1997); *State v. Farnsworth*, 185 Wn.2d at 777.

Michael Ming's note unequivocally demanded bottles of oxycodone and fentanyl, controlled substances to which he lacked any entitlement. The language of the note necessarily intimated violence by stating, "I dont want to hurt you or myself. Make it in less than a minute. Nothin funny." Ex. 6. An ordinary person could reasonably infer that the note threatened bodily harm. Thomas Keefe testified that he feared for his safety.

Although Michael Mings testified that he did not intend to threaten pharamacist Thomas Keefe when he handed the demand note, the language of the note and the demand for controlled substances late at night, in a nearly empty store, conveyed an implied threat of force designed to compel the pharmacist to give Mings the opioids. Because this evidence supported the elements of second degree robbery and did not support an inference that Ming only committed third degree theft, the trial court properly refused the instruction on the lesser included offense.

## CONCLUSION

Under the undisputed facts of this case, the evidence did not support an inference that Micahel Mings committed only third degree theft to the exclusion of second degree

No. 35960-3-III
*State v. Mings*

robbery. Consequently, the trial court did not abuse its discretion in refusing to instruct the jury on third degree theft. We affirm the conviction of Mings for second degree robbery.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, A.C.J.

6