# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53527-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| MARX WAYNE COONROD, | |
| Appellant. | |

MAXA, J. – Marx Coonrod appeals his convictions of three counts of first degree robbery and one count of attempted first degree robbery.  The convictions arose from two incidents in which a man entered the same bank with a bandana covering his face and a hoodie over his head and demanded money, and a third incident in which a man approached the bank with a bandana on his face but left when he saw a security guard.

We hold that the trial court did not err in (1) denying Coonrod's request for a lesser included offense jury instruction regarding first and second degree theft and (2) excluding evidence that another person was at the scene during the third incident.  We also decline to address the multiple assertions Coonrod makes in his statement of additional grounds (SAG).  Accordingly, we affirm Coonrod's convictions.

FACTS

*Bank Incidents*

On February 1, 2016, a man entered a bank in Vancouver wearing a bandana over his face, sunglasses, a dark beanie style hat, and a hood over his head. The man approached a teller's window and pushed a customer waiting there aside. He then demanded that the teller give him 50s and 100s. The teller gave him money out of her drawer. The man then went to another teller and told her to give him all her 50s and 100s. The teller gave him the money she had in her top drawer. The man took a total of $1,690 from the bank.

The man left the bank and headed in the direction of a closed pizza restaurant next door. Bank employees noticed that he had a distinctive gait, somewhat like a limp. Employees at an insurance office next door saw the man walk toward an alley behind the closed pizza restaurant.

In the subsequent investigation the police located a dark beanie style hat in the alley by the closed pizza restaurant. The hat was dry while the rest of the ground was wet.

On March 16, a man entered the same bank wearing a blue bandana on his face, sunglasses, and a hood over his head. The man went to a teller and told her to give him 50s and 100s. At some point he said "ándale" – "hurry up" in Spanish. The teller handed him money. The man took a total of $4,850.

The man exited the bank heading in the direction of the closed pizza restaurant. Bank employees again noticed a distinctive gait. Bank employees who were present during both the February 1 and March 16 incidents were convinced that the same person was involved in both incidents. An employee at the insurance office observed the man walk to the alley behind the closed pizza restaurant and then observed a person in a white truck with ladder racks drive out from behind the building.

On April 22, a man wearing a bandana over his face and a hoodie walked by the insurance office and toward the bank. An insurance employee stated that the robber was back. A bank employee who had been involved in a prior incident started crying when she saw him. However, the bank had hired a security guard, who would open the locked front door for customers. The man walked up to the bank but did not enter and instead walked back toward the closed pizza restaurant. The man had the same distinctive gait. The man walked to the alley behind the closed restaurant and drove away in a white truck with ladder racks. A bank employee and an insurance office employee both saw the man and thought he was the same person who had taken money from the bank before.

One of the insurance office employees ran outside and took pictures of the man and the white truck. The employee recognized the truck as the same one, parked in the same place, that she had seen after the March 16 robbery.

*Investigation*

Police submitted the DNA from the beanie hat for testing. The DNA matched Coonrod. Police went to Coonrod's apartment, where an officer observed him leaving. The officer observed that he walked with a distinctive gait and that he got into a white truck with ladder racks.

Police obtained a search warrant for Coonrod's home and truck. They discovered a blue bandana in the home and they found a beanie style hat and sunglasses in the truck. Police obtained cell phone records for Coonrod's phone. The records showed that Coonrod's phone was turned off or not connected to his cellular network at the time of the three incidents.

When officers questioned Coonrod, he admitted going to the bank on April 22 but stated that he decided not to enter after seeing the security guard because he had alcohol on his breath.

Coonrod also acknowledged that it was him and his truck in the photographs taken by the insurance company employee. And Coonrod stated that he walked with a slight limp due to surgery on his hips and screws in his knee.

The State charged Coonrod with three counts of first degree robbery and one count of attempted first degree robbery. Two of the first degree robbery counts were based on the February 1 incident, where the man demanded money from two different tellers.

*Trial*

At trial, one of the bank employees testified that on February 1 the man walked into the bank and said, "[T]his is not a joke. It's a bank robbery." 2 Report of Proceedings (RP) at 224. He then went to one of the tellers, demanded money, and again stated that it was a bank robbery or a robbery. None of the other bank employees testified that the man said this.

Regarding the March 16 incident, one of the bank employees stated that the man said, "[E]verybody stay where you are" when he first came into the bank. 1 RP at 90. And when he left he again stated the same thing. Another bank employee stated that the man said, "[N]o one move." 2 RP at 306. None of the other bank employees testified that the man made these statements. Another bank employee said that when the man said "ándale" it was "very loud and very scary for everyone in the branch." 2 RP at 243.

Coonrod sought to present evidence that there was another man named Doug Shattuck at the bank on April 22 who also was wearing a hoodie. Shattuck was there using the automated teller machine (ATM). Coonrod represented that bank employees thought that the man they identified as the person who had taken money from the bank before had used the ATM on April 22. Coonrod argued that the evidence was needed to discredit the testimony of bank employees

who identified Coonrod as the man in the previous incidents. The trial court granted the State's motion in limine to exclude this evidence based on relevance.

At the end of the trial, Coonrod requested that the jury be instructed on the lesser included offenses of first degree theft and second degree theft. The trial court denied his request, concluding that theft was not a lesser included offense to first degree robbery.

The jury found Coonrod guilty as charged. Coonrod appeals his convictions.

ANALYSIS

A.    LESSER INCLUDED OFFENSE INSTRUCTION – THEFT

Coonrod argues that the trial court erred in denying his request for a lesser included offense instruction regarding first degree and second degree theft. We disagree.

1.    Legal Principles

RCW 10.61.006 provides a defendant with a statutory right to a lesser included offense instruction. *State v. Condon*, 182 Wn.2d 307, 316, 343 P.3d 357 (2015). A lesser included offense instruction must be given when two prongs are satisfied "(1) each of the elements of the lesser offense is a necessary element of the offense charged (legal prong) and (2) evidence in the case supports an inference that the lesser crime was committed (factual prong)." *State v. Coryell*, 197 Wn.2d 397, 400, 483 P.3d 98 (2021) (citing *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978)).

The party requesting the lesser included offense instruction is entitled to the instruction, only if both prongs of the *Workman* test are satisfied. *Condon*, 182 Wn.2d at 316. We review the legal prong of this test de novo, and we review the factual prong for an abuse of discretion. *Id.* at 315-16.

2.    Factual Prong

We do not need to address the legal prong of the *Workman* test because we conclude that the factual prong is not satisfied under the facts of this case.

Under the factual prong, "[a] jury must be allowed to consider a lesser included offense if the evidence, when viewed in the light most favorable to the defendant, raises an inference that the defendant committed the lesser crime instead of the greater crime." *State v. Henderson*, 182 Wn.2d 734, 736, 344 P.3d 1207 (2015).  But "the evidence must affirmatively establish the defendant's theory of the case – it is not enough that the jury might disbelieve the evidence pointing to guilt." *State v. Fernandez-Medina*, 141 Wn.2d 448, 456, 6 P.3d 1150 (2000).  To give the instruction, there must be enough evidence that a jury could rationally convict the defendant of the lesser offense and acquit the defendant of the greater offense.  *Id.*

The issue here is whether a jury could find that Coonrod did *not* threaten the use of immediate force, violence, or fear of injury to obtain or retain possession of the bank's money or to prevent or overcome resistance to the taking.  "[A] theft does not rise to the level of a robbery because it involves no use or threat of force to effectuate the same outcome: taking another person's property." *State v. Farnsworth*, 185 Wn.2d 768, 779, 374 P.3d 1152 (2016).

RCW 9A.04.110(28) defines "threat" as "to communicate, directly or indirectly the intent" to take a certain action.   The test for an indirect threat of force is an objective one: whether " 'an ordinary person in the victim's position could reasonably infer a threat of bodily harm from the defendant's acts.' " *Farnsworth*, 185 Wn.2d at 776 (quoting *State v. Witherspoon*, 180 Wn.2d 875, 884, 329 P.3d 888 (2014)).

In *Farnsworth*, the Supreme Court found persuasive the reasoning in *State v. Collinsworth*, 90 Wn. App. 546, 551, 966 P.2d 905 (1997), where the court stated that

"demanding money from a teller communicated an implied threat because it was 'objectively reasonable' for a bank teller to fear harm in the circumstances, even though no explicit threat was made." *Farnsworth*, 185 Wn.2d at 777 (quoting *Collinsworth*, 90 Wn. App. at 551). " 'No matter how calmly expressed, an unequivocal demand for the immediate surrender of the bank's money, unsupported by even the pretext of any lawful entitlement to the funds, is fraught with the implicit threat to use force." *Farnsworth*, 185 Wn.2d at 777 (quoting *Collinsworth*, 90 Wn. App. at 553).

However, the court in *Farnsworth* rejected the notion that "any unlawful demand for money at a bank would constitute robbery." 185 Wn.2d at 779. "In every such case, the circumstances will be unique and context-dependent, causing courts to determine whether the evidence supports an objective finding of a threat under our *Witherspoon* standard." *Id.*

Here, on both February 1 and March 16 Coonrod entered the bank with a bandana covering his face and a hoodie over his head and demanded money to which he had no lawful entitlement. Under *Farnsworth*, this evidence certainly was sufficient to find that there was an implied threat of force. *See* 185 Wn.2d at 777. We need not decide whether this evidence, standing alone, would *require* a jury to find an implied threat of force because here there was additional evidence of an implied threat of force.

One witness testified that on February 1, Coonrod twice stated that a bank robbery was occurring. In addition, Coonrod pushed a customer out of the way before demanding money from a teller. Given these statements in the context of entering the bank with a bandana covering his face, pushing aside a customer, and demanding money, a jury could not have found that Coonrod did not impliedly threaten force.

Regarding March 16, witnesses stated that Coonrod twice stated "[E]verybody stay where you are" and "[N]o one move." 1 RP at 90; 2 RP at 306. In addition, several witnesses testified that Coonrod said "ándale" when demanding money. One witness testified that this statement was loud and scary. Again, a jury could not have found that Coonrod did not impliedly threaten force given the fact that Coonrod made these statements with a bandana covering his face and a hoodie over his head while demanding money.

Coonrod emphasizes that other witnesses did not mention that he made the statements referenced above on February 1 and March 16. He claims that viewing the evidence in the light most favorable to him, a jury could find that he did not actually make these statements. However, there is no affirmative evidence that Coonrod did not make these statements. As noted above, "it is not enough that the jury might disbelieve the evidence pointing to guilt." *Fernandez Medina*, 141 Wn.2d at 456.

We conclude that Coonrod fails to establish the factual prong of the *Workman* test. Accordingly, we hold that the trial court did not abuse its discretion in denying Coonrod's request for a lesser included offense instruction of first degree and second degree theft.

B.    EXCLUSION OF DEFENSE EVIDENCE

Coonrod argues that the trial court erred by excluding evidence of Doug Shattuck's presence at the bank on April 22. We disagree.

Under ER 401, evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Irrelevant evidence is not admissible. ER 402. We review a trial court's evidentiary rulings for an abuse of discretion. *State v. Slater*, 197 Wn.2d 660, 667, 486 P.3d 873 (2021).

Here, Coonrod wanted to present evidence that Shattuck used the bank's ATM on April 22 while wearing a hoodie. Coonrod claimed that bank employees thought that the man who previously had taken money from the bank had used the ATM on April 22. He apparently wanted to argue that bank employees mistakenly identified Shattuck as the robber.

However, to obtain appellate review of the exclusion of evidence, a party must have provided an offer of proof in the trial court. *State v. Wang*, 5 Wn. App. 2d 12, 26, 424 P.3d 1251 (2018). The offer of proof should "inform the trial court of the specific nature of the offered evidence so the court can judge its admissibility." *State v. Burnam*, 4 Wn. App. 2d 368, 377, 421 P.3d 977 (2018).

In the trial court, Coonrod failed to identify any bank employee who mistakenly identified Shattuck as the man who had previously taken money from the bank. Without such an offer of proof, we cannot review whether the trial court properly concluded that the mere fact that Shattuck was present on April 22 was irrelevant.

Accordingly, we hold that the trial court did not abuse its discretion in excluding evidence regarding Shattuck's presence at the bank on April 22.[1]

## C.    SAG CLAIMS

In his SAG and amended SAG, Coonrod asserts a time for trial violation, misconduct by multiple individuals, ineffective assistance of counsel, witness perjury, and evidentiary error. We decline to consider these assertions.

---

[1] Coonrod makes a one sentence statement in his opening brief that he had a constitutional right to present this evidence. But he does not identify this constitutional claim in his assignments of error or present argument regarding the claim. An alleged constitutional violation requires more than just a passing reference. *See State v. Wright*, 19 Wn. App. 2d 37, 54-55, 493 P.3d 1220 (2021), *rev. denied*, 199 Wn.2d 1001 (2022). Therefore, we decline to address this claim.

### 1. SAG Appendix

Initially, Coonrod has attached numerous documents to his SAGs. RAP 10.3(a)(8) provides, "An appendix may not include materials not contained in the record on review." Accordingly, we will not consider documents not included in the appellate record.

### 2. Unexplained Claims

Coonrod makes a number of assertions, claims, and allegations in his 50-page SAG and amended SAG. However, he does not sufficiently explain some of these claims and allegations. Under RAP 10.10(c), we will not consider a SAG "if it does not inform the court of the nature and occurrence of alleged errors." Therefore, we will not address those assertions for which we cannot discern the nature of the claimed errors.

### 3. Matters Outside the Appellate Record

On direct appeal, we may consider only facts contained in our record. *State v. Estes*, 188 Wn.2d 450, 467, 395 P.3d 1045 (2017). A personal restraint petition (PRP) is the proper avenue for addressing arguments based on facts outside of the record. *Id*.

#### a. Time for Trial Violation

Coonrod asserts that his right to a speedy trial was violated. CrR 3.3 governs a defendant's right to be brought to trial in a timely manner. CrR 3.3(b)(1)(i) provides that a defendant who is detained in jail must be brought to trial within 60 days of arraignment. But CrR 3.3(e) provides that certain time periods are excluded in computing the time for trial. CrR 3.3(e)(3) states that these excludable time periods include continuances the court grants under CrR 3.3(f), and CrR 3.3(e)(8) excludes "[u]navoidable or unforeseen circumstances affecting the time for trial beyond the control of the court or of the parties."

Here, the State filed charges in April 2016. We have no record of when Coonrod was arraigned, but we assume it was shortly thereafter. We have no record of the continuance requests between the 2016 arraignment and February 2019. Our record shows both defense counsel and the State requested a continuance on February 7, 2019 and then defense counsel requested another continuance on March 21, 2019 to prepare for trial. In granting the March 21 continuance, the trial court noted that Coonrod had gone through six prior attorneys. Trial then commenced on April 15, 2019.

We recognize that three years is a significant time between arraignment and trial. However, that time may have included periods excluded from the time to trial calculations under CrR 3.3(e)(3) and CrR 3.3(e)(8). Our record does not show the reasons the trial court continued the trial date. Therefore, Coonrod's time to trial claim relies on facts not contained in the appellate record and we decline to address this claim.

b. Prosecutorial/Governmental/Judicial Misconduct

Coonrod asserts that he was denied a fair trial based on misconduct by the police, the prosecutor, the trial court, and correction officers. He dedicates numerous pages of his SAG and amended SAG to allege that evidence was concealed, witnesses were not disclosed, documents were wrongly taken while he was incarcerated, and evidence was not properly collected and stored. Once again, these claims are not supported by our record. Therefore, we decline to address these claims.

c. Ineffective Assistance of Counsel

Coonrod asserts that he received ineffective assistance of counsel on a number of grounds, including that defense counsel did not return discovery materials taken from him by corrections officers, conspired with the judge and prosecutor against him, and failed to conduct a

11

reasonable investigation into his case. But we do not have an adequate record to determine whether defense counsel's performance was deficient. Therefore, we decline to address these claims.

4. Alleged Witness Perjury

Coonrod asserts in his SAG and amended SAG that various witnesses committed perjury at trial.

We do not address issues of witness credibility on appeal and instead defer to the jury's measure of witness credibility and resolution of conflicting testimony. *State v. Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011). "Whether a witness testifies truthfully is an issue entirely within the province of the trier of fact." *Id.* Because the jury had a full opportunity to consider each witness's testimony, we decline to address these claims.

5. Evidentiary Ruling

Coonrod asserts that the trial court erred by excluding evidence of Shattuck's presence at the bank on April 22. RAP 10.10(a) states that the defendant may file a SAG "to identify and discuss those matters related to the decision under review that the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel." This claim was adequately addressed by appellate counsel, and we have analyzed this issue above. Therefore, we decline to address this issue further.

CONCLUSION

We affirm Coonrod's convictions.

No. 53527-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

WORSWICK, P.J.

PRICE, J.