IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38537-0-III |
| Respondent | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| C.J.H., | ) | |
| | ) | |
| Appellant. | ) | |

STAAB, J. — C.J.H. appeals his adjudication for attempted second degree robbery, arguing that there was insufficient evidence to prove identification and that his actions constituted a threat. We disagree and affirm.

BACKGROUND

1.    ALLEGATIONS

Two men entered the Cle Elum Safeway grocery store. An employee recognized one of the men as an individual who she had attended high school with. The other individual with him was wearing a gray hoodie. The two men went throughout the store on a motorized cart and eventually left without paying for the cart full of groceries. Both men entered a maroon van with the stolen groceries and left. After reviewing the

surveillance video, the employee testified that one of the individuals in the van looked like they were wearing a blue hat.

The following evening, a young man in a gray hoodie approached Tom Kasinger while he was pumping gas at a Short Stop gas station in Cle Elum. The perpetrator screamed "give me your money" with his finger in the witness's face. Kasinger, a former law enforcement officer, initially thought it was a joke. However, when the perpetrator repeated the demand in a more serious tone, Kasinger realized the perpetrator was serious. Kasinger contemplated going for his own weapon, but changed his mind and decided to walk away. As he walked into the store, he remembered thinking, "I might get shot in the back." Rep. of Proc. (RP) at 47. Once in the store, Kasinger saw the perpetrator run and jump into a white Ford pickup truck and drive away. A short time later, Kasinger called 911 because he was concerned about somebody else getting hurt. He told the 911 operator that he was confronted by someone claiming to have a gun and demanding his money.

About an hour after the incident, Kasinger received a call from an officer asking him to come to a lodge to identify a vehicle. When he arrived, Kasinger told police it did not look like the vehicle. At that same time, a truck was driving into the Safeway parking lot nearby. Kasinger stated that the truck pulling into Safeway looked more like the suspect's vehicle. The officers stopped the truck and had the individuals get out. C.J.H. was identified as the passenger in the truck. Once C.J.H. was out of the truck, Kasinger

identified C.J.H. as the person who approached him at the gas station. Kasinger testified that he recognized C.J.H. "[f]rom the hoodie and just the look." RP at 61. C.J.H. was arrested and charged with attempted second degree robbery and third degree theft.

2.      ADJUDICATION HEARING

At the adjudicatory hearing, Kasinger could not identify C.J.H. in the courtroom. Kasinger also acknowledged that he never saw the perpetrator with a gun, could not remember if the perpetrator had threatened to use a gun, but believed at the time it was possible that the perpetrator possessed a gun because of the way the perpetrator held his hand in his hoodie sweatshirt. The witness also acknowledged that the perpetrator never made a direct and explicit threat of violence. Instead, the perpetrator demanded the witness's money in an insistent tone of voice.

The State admitted a security video from the gas station. The court noted that the quality of the video was insufficient to establish identity, but the court could see the suspect's build, clothing, and actions.

Deputy Benito Chavez testified that he was one of the officers who responded to the Short Stop robbery call and subsequently arrested C.J.H. At the hearing, Deputy Chavez identified C.J.H. as the person he arrested. In addition, Officer Robert Partridge testified at the hearing. Officer Partridge testified that he investigated the theft that occurred at the Safeway on October 12. He watched the video involving the attempted

robbery at the Short Stop and testified that C.J.H. was "wearing basically the same clothing the following day during the robbery that he was wearing when he committed the theft at the Safeway." RP at 114.

The trial court entered a ruling following the adjudicatory hearing finding C.J.H. guilty of attempted second degree robbery and not guilty of third degree theft. The trial court noted that it could identify C.J.H. in the surveillance photographs from the Safeway theft. In these photographs, C.J.H. is wearing a distinctive gray hoodie and blue hat. The court also noted that the surveillance video from the gas station shows someone with the same build, moving in the same way, wearing the same distinctive hoodie, the same hat, pants, shoes, and making the same gestures as described by Kasinger.

The judge also found that C.J.H.'s actions at the gas station amounted to a threat. The court noted that the combination of being deserted in the middle of a gas station at night, having a person walk up, get in your face, and shake their finger at you, whether a person was petite or tall, a reasonable person would be fearful under these circumstances.

3.    APPELLATE PROCEDURE

The court entered a disposition order following the ruling for C.J.H on November 4, 2021, and a notice of appeal was entered on that same date. In C.J.H.'s original brief, he assigned error to the trial court's failure to provide written findings and conclusions as

4

required by JuCR 7.11(c), (d). The State conceded error and this court entered an order

remanding the cause for entry of written findings of fact and conclusions of law.

The trial court filed its findings of fact and conclusions of law.[1] Relevant to this

appeal, the trial court's findings included the following:

> 7. [C.J.H.] aggressively approached [the victim] shook his finger in [the victim's] face and used his body to demand money. Taken with the circumstances of being at a deserted gas station at night any reasonable person would feel threatened by [C.J.H.'s] actions and be fearful that [he] had a weapon.
>
> 8. [C.J.H.'s] actions constitute a substantial step towards the commission of robbery in the second degree and intended to commit robbery in the second degree by obtaining money from [the victim] by threat of force.

Clerk's Papers at 90.

ANALYSIS

1.      SUFFICIENCY OF EVIDENCE OF IDENTIFICATION

C.J.H. contends that there was insufficient evidence to prove identity for purposes

of the charge of attempted second degree robbery. He argues that Kasinger identified a

hoodie in the Safeway parking lot and did not identify C.J.H. We disagree.

---

[1] Because the issue relating to the findings of facts and conclusions of law has been addressed and the issue is moot, we do not address it in this opinion.

"The State has the burden of proving the elements of a crime beyond a reasonable doubt." *State v. Clark*, 190 Wn. App. 736, 755, 361 P.3d 168 (2015) (citing *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)). In reviewing a sufficiency of the evidence claim, this court views "the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Clark*, 190 Wn. App. at 755. "A challenge to the sufficiency of the evidence admits the truth of the State's evidence." *Id.* When challenging sufficiency of the evidence, "circumstantial evidence and direct evidence carry equal weight." *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004).

Viewing the evidence in a light most favorable to the State, there was substantial evidence to support the trial court's finding that C.J.H. was the person who attempted to rob Kasinger at the Short Stop gas station. Within one hour of the attempted robbery, Kasinger identified C.J.H. not only because of the distinctive hoodie but also based on his "look." While Kasinger did not elaborate on what he meant by C.J.H.'s "look," this was not a situation where Kasinger only saw a nondescript person wearing a distinctive hoodie. Instead, Kasinger, a prior law enforcement officer, stood face-to-face with the person attempting to rob him, pointing a finger in Kasinger's face, and making several demands for Kasinger's money. Kasinger's identification of C.J.H. was based on more than a person wearing the same hoodie.

6

2.      SUFFICIENCY OF EVIDENCE OF THREAT

C.J.H. asserts that there was insufficient evidence that his actions constituted a threat sufficient to support the adjudication for attempted second degree robbery. We find that the evidence was sufficient.

We review a trial court's decision following a bench trial to determine whether its findings of fact are supported by substantial evidence and, in turn, whether those findings support its conclusions of law. *Endicott v. Saul*, 142 Wn. App. 899, 909, 176 P.3d 560 (2008).

A person is guilty of robbery in the second degree if he or she commits robbery. RCW 9A.56.210(1). In turn, "a person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury." RCW 9A.56.190. "Any force or threat, no matter how slight, which induces an owner to part with his property is sufficient to sustain a robbery conviction." *State v. Handburgh*, 119 Wn.2d 284, 293, 830 P.2d 641 (1992).

"A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1). C.J.H. concedes that the acts described in connection with the gas station incident amount to more than mere preparation but argues

7

that the demand made did not contain an explicit threat and did not amount to an implied threat.

A force or threat need not be overt or involve the display of a weapon. *See, e.g.*, *State v. Collinsworth*, 90 Wn. App. 546, 553-54, 966 P.2d 905 (1997) (holding that, although bank robber neither displayed weapon nor made overt threat, his demand for money was "fraught with the implicit threat to use force"). "A threat need not be explicit if the defendant indirectly communicates his intent." *State v. Shcherenkov*, 146 Wn. App. 619, 627, 191 P.3d 99 (2008); *see also* RCW 9A.04.110(28) (stating that a "threat" may be communicated directly or *indirectly*) (emphasis added).

> "[I]f the taking of the property [is] attended with such circumstances of terror, or such threatening by menace, word, or gesture as in common experience is likely to create an apprehension of danger and induce a [person] to part with property for the safety of his [or her] person, it is robbery."

*Collinsworth*, 90 Wn. App. at 551 (quoting *State v. Redmond*, 122 Wash. 392, 393, 210 P. 772 (1922)).

An objective standard is applied to determine whether actions amounted to an implied threat. *See State v. Witherspoon*, 180 Wn.2d 875, 884, 329 P.3d 888 (2014). In this case, there was sufficient evidence to support the court's finding that a reasonable person under these circumstances would infer a threat of bodily harm from C.J.H.'s actions and words.

Although Kasinger testified that he initially thought C.J.H.'s demand for money was a joke, he also testified that he changed his mind and realized what was happening when C.J.H. changed his tone of voice and his demand. Indeed, Kasinger testified that he had a fleeting thought of going for his own weapon and was afraid of being shot in the back when he walked away from C.J.H. rather than comply with the demand. Kasinger decided to call the police because he "didn't give any money" so "somebody might get hurt." RP at 48. Although Kasinger did not see a gun, he believed there may have been one given the way C.J.H. was holding his hand in his hoodie. Objectively, a reasonable person would infer a threat based on these facts.

Finally, C.J.H. contends the court improperly inserted itself as the victim in deciding whether the threat was objectively reasonable. While the judge does use himself as an example stating he would feel threatened, he also noted both a petite or tall person would feel threatened. In the end he stated, "I think any reasonable per—person would be [fearful]." RP at 133. This was not error. The judge was simply referring to himself as the quintessential reasonable person who would feel threatened under the circumstances.

9

No. 38537-0-III
*State v. C.J.H.*

 We reject C.J.H.'s assignments of error and find the evidence sufficient to support the adjudication for attempted second degree robbery.

 Affirmed.

 A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
     Staab, J.

WE CONCUR:

_____
 Pennell, J.

_____
 Cooney, J.